Danielle R. Pena, Esq., SBN 286002
dpena@PHGLawGroup.com
PHG Law Group
501 West Broadway, Suite 1480
San Diego, CA 92101
Telephone:  (619) 826-8060
Facsimile:   (619) 826-8065

Attorneys for Plaintiff Jeremy Brink

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

JEREMY BRINK, Individually,

                        Plaintiffs,

     v.

COUNTY OF SAN DIEGO; DOE
SHERIFF'S DEPUTIES 1-5,
Individually; DOE SHERIFF'S
NURSES 6-10, Individually; AND
DOES 11-15, Individually, Inclusive,

                        Defendants.

Case No.   **'23CV1756 DMS SBC**

**COMPLAINT FOR:**

**1. 14th AMENDMENT – INADEQUATE
   MEDICAL CARE
2. BANE ACT – §52.1
3. ADA VIOLATION
4. NEGLIGENCE**

COMPLAINT                                        CASE NO.

## I.

## <u>STATEMENT OF FACTS</u>

1.     Plaintiff Jeremy Brink is a 34-year-old local San Diegan that was detained in San Diego County custody on July 29, 2022.  In early August of 2022, while being detained in general population housing, Mr. Brink learned that the inmate in the next cell tested positive for COVID-19.  The inmate was not removed from general population housing, nor were any PPE precautions administered to other inmates in the housing unit.

2.     Approximately two days later, Mr. Brink started to feel ill with COVID-19 related symptoms.  Mr. Brink submitted a medical request form on or about August 13, 2022, seeking testing and treatment for his COVID-19 symptoms.

3.     At approximately 3:00 a.m. on August 14, 2022, DOE nurse came to speak to Mr. Brink.  Mr. Brink told the nurse he thought he contracted COVID-19 because the inmate in the cell over had tested positive a day or two before.  Mr. Brink also informed the nurse that he was suffering from severe chills, sneezing, a sore throat, and extreme light-headedness.  He specifically told the nurse, "When I stand up my cheeks tingle and I feel faint."  The nurse took Mr. Brink's temperature, which was recorded at 102.1.

4.     Instead of administering further care, pursuant to County policy, the nurse told Mr. Brink, "Ok, you're good."  The nurse never tested Mr. Brink for COVID-19, nor did he invoke the COVID-19 quarantine protocols.  For the following two days, Mr. Brink's symptoms worsened.  Mr. Brink was suffering from shortness of breath, muscle fatigue, body weakness, fever, chills, a sore throat, and severe lightheadedness. During that time, Mr. Brink submitted two additional medical request forms detailing his suffering and requesting medical treatment. Each medical request went ignored.

5.     On August 18, 2022, Mr. Brink was transported to court for a hearing. Mr. Brink informed his public defender that he had likely contracted COVID-19

COMPLAINT                                                      CASE NO.

and was feeling very lightheaded and faint. Mr. Brink was excused from court and taken back to the court holding cell. Mr. Brink informed several DOE deputies of his illness and specifically his lightheadedness and dizziness. Mr. Brink asked for medical treatment from DOE deputies but each DOE deputy called Mr. Brink a liar. Mr. Brink begged several DOE deputies to escort him back to his housing unit, but each deputy continued to ignore Mr. Brink's serious medical needs.

6.      After asking every deputy that came into the court holding area for help, Mr. Brink was taken back to his housing unit without first receiving medical intervention. Prior to being escorted to his cell, Mr. Brink again told DOE deputy that he was feeling faint and feverish and that he was feeling too weak to walk. Mr. Brink specifically asked to go to medical first but was denied treatment yet again.

7.      As Mr. Brink walked up the staircase of the housing module, he fainted and fell to the ground. Mr. Brink remained unconscious and was transferred to the hospital.

8.      Mr. Brink woke up in the hospital with little to no feeling below his waist. On that same day, the hospital tested Mr. Brink and confirmed that he contracted COVID-19.

9.      The hospital diagnosed Mr. Brink with Guillain-Barre Syndrome ("GBS"), which was a direct result from Mr. Brink's untreated COVID-19 infection. According to the Mayo Clinic, GBS is a rare disorder in which one's immune system attacks the nerves. Weakness and tingling are usually the first symptoms, but those sensations quickly spread, paralyzing parts of the body. While recovery may take up to several years, most people are able to walk again six months after symptoms first started. Some people may have lasting effects from it, such as weakness, numbness, or fatigue. According to the National Institutes of Health, "COVID-19 has been shown to be associated with a lot of neurological complications, of whom GBS is an important post-infectious consequentiality."

///

3

COMPLAINT                                                        CASE NO.

The treatment for GBS is continuous intravenous immunoglobulin treatment, which Mr. Brink received for eight days while being treated at the hospital.

10.    As a result of GBS, Mr. Brink had no feeling below his waist. The hospital informed Mr. Brink that GBS caused Mr. Brink to fall unconscious. The fall itself resulted in two herniated disks.

11.    At discharge, Mr. Brink was prescribed a wheelchair, as he could not walk without it. Mr. Brink was told by the hospital that he would need to be evaluated by a neurologist within 24 hours. Mr. Brink was also informed that he would require intense physical therapy if he wanted to walk again. DOE nurse knew this information via the hospital discharge instructions and is duty-bound, per policy, to ensure that Mr. Brink receives the treatment ordered by the hospital. The discharge instructions explicitly identified that the neurology consultation was for the Guillain-Barre Syndrome. However, DOE nurse failed to ensure Mr. Brink received a neurological consultation or physical therapy, thereby prolonging and worsening Mr. Brink's partial paralysis.

12.    Despite Mr. Brink being discharged in a wheelchair and having no ability to walk under his own power, DOE classification deputy failed to house Mr. Brink in ADA or a wheelchair-complaint cell. DOE Classification Deputy is trained to house inmates with wheelchairs in ADA compliant cells.

13.    On or around August 27, 2022, Mr. Brink attempted to transfer himself from the toilet back to the wheelchair. However, during the transition, because the cell was not wheelchair complaint, Mr. Brink fell, slamming his head against the table and re-injuring his back. After being unconscious for a few minutes, Mr. Brink woke up to his cellmate pushing the emergency call button for medical assistance. The cellmate was yelling "mandown."

14.    Based on information and belief, other inmates also pressed their call button to no avail. Mr. Brink was ignored by DOE Deputies for 45 minutes. Ultimately, Mr. Brink was transferred to the hospital. He was told that the fall

COMPLAINT                                                                    CASE NO.

resulted in a fractured vertebrae and a concussion causing mild brain trauma.  Mr. Brink also lost a tooth a result of slamming into the table.  Following this hospitalization, Mr. Brink was again housed in a non-ADA complaint cell.  For the remainder of his detention, Mr. Brink was denied a neurology consultation and physical therapy.

15.    As of today's date, Mr. Brink has use of his lower extremities but still suffers from weakness and numbness in his legs.

## II.

## JURISDICTION AND VENUE

16.    This action arises under the Constitution and laws, including Article III, Section 1 of the United States Constitution and is brought pursuant to 42 U.S.C. section 1983.  The Jurisdiction of this court is invoked pursuant to 28 U.S.C. section 1331.  State law claims are alleged as well, over which Plaintiff invokes the Court's supplemental jurisdiction.

17.    This case is instituted in the United States District Court for the Southern District of California pursuant to 28 U.S.C. section 1391, as the judicial district in which all relevant events and omissions occurred and in which Defendants maintain offices, work, and/or reside.

18.    Pursuant to the California Government Code, on February 6, 2023, Plaintiff filed his claim with the County of San Diego based on the foregoing incident.  The claim was rejected by the County of San Diego on March 22, 2023.  Thus, the present complaint is timely, pursuant to California Government Code section 945.6.

19.    Furthermore, pursuant to requirements set forth in the Prison Litigation Reform Act, Plaintiff has exhausted all administrative remedies related to the claims alleged herein.

/ / /

/ / /

5

COMPLAINT                                                           CASE NO.

## III.

## THE PARTIES

20.    Plaintiff Mr. Brink was a resident of San Diego County in the State of California and a citizen of the United States at all times relevant to this complaint. He was injured by DOE Defendants while being detained at Central jail, a County of San Diego jail.

21.    Defendant County of San Diego ("County") is and at all times mentioned herein, was a public entity authorized by law to establish jail facilities responsible for securing and protecting detained and incarcerated citizens and persons.  At all-times mentioned herein, the County was responsible for overseeing the operation, management, and supervision of the Sheriff's Department, as well as its jails, deputies, and nurses.

22.    The names of the individual County Deputies/Nurses/Medical staff who are responsible for Plaintiff's injuries are currently unknown to Plaintiff.  As such, these individuals are sued herein as DOE COUNTY DEPUTIES 1-5 and DOE COUNTY NURSES 6-10.

23.    The true names and capacities whether individual, corporate, associate or otherwise, of defendants named herein as DOES 1-10 are unknown to Plaintiff, who therefore sues said defendants by said fictitious names.  Plaintiff will amend this complaint to identify said defendants true names and capacities when the same have been ascertained.  Plaintiff is informed and believes and thereon alleges that all defendants sued herein as DOES are in some manner responsible for the acts and injuries alleged herein.

24.    At all times mentioned herein Defendants named herein as DOES 1-10 were employees, agents, and/or independent contractors of Defendant County, and in doing the acts hereinafter described acted within the course and scope of their employment.  The acts of all defendants and each of them were also done under the color and pretense of the statutes, ordinances, and regulations of the County of San

6

Diego and the State of California.  In committing the acts and/or omissions alleged herein, all defendants acted under color of authority and/or under color of law and knowingly conspired together.  Plaintiff sues all public employees named as Defendants in their individual capacities.

**IV.**

**<u>FIRST CAUSE OF ACTION</u>**

**42 U.S.C. Section 1983 – 14th Amendment**

**Inadequate Medical Care**

**[By Jeremy Brink Against DOE Defendants 1-10]**

25. Plaintiff realleges and incorporates by reference all paragraphs stated above, as though fully set forth herein.

26. Under the Fourteenth Amendment, Mr. Brink has a guaranteed right to medical care while in the custody and control of the County.

27. Here, DOE nurses and deputies, intentionally placed Mr. Brink at risk for contracting COVID-19 when they failed to follow County policy by failing to remove and isolate the cellmate that had tested positive for COVID-19, and by failing to sanitize the housing module and administer PPE to other inmates in the housing module.

28. Two days later, Mr. Brink started to feel ill with COVID-19 related symptoms.  He submitted a medical request form on or about August 13, 2022, seeking testing and treatment for his COVID-19 symptoms.

29. At approximately 3:00 a.m. on August 14, 2022, DOE nurse came to speak to Mr. Brink.  Mr. Brink told DOE nurse he thought he contracted COVID-19 because the inmate in the cell over had tested positive a day or two before.  Mr. Brink also informed the nurse that he was suffering from severe chills, sneezing, a sore throat, body weakness, and extreme light-headedness.  He specifically told the nurse, "When I stand up my cheeks tingle and I feel faint."  DOE nurse took Mr. Brink's temperature, which was recorded at 102.1.  DOE nurse violated County

7

policy by failing to test Mr. Brink for COVID-19 given his clinical symptoms and fever. According to the County's website, policy required DOE nurse to "immediately test and isolate inmates that test positive for COVID-19 and provide them with proper medical care."

30.     Separate and apart from DOE nurse's obligation to treat Mr. Brink, DOE nurse was also mandated to document Mr. Brink's encounter, including his symptoms and vitals.  DOE nurse was also required to pass-down information relating to Mr. Brink's symptoms so that follow-on nursing staff could monitor and treat Mr. Brink.  DOE nurse failed in both regards.

31.     As a result of DOE nurse's failure to act, for the following two days, Mr. Brink's symptoms worsened.  Mr. Brink was suffering from shortness of breath, muscle fatigue, body weakness, fever, chills, a sore throat, and severe lightheadedness. During that time, Mr. Brink submitted two additional medical request forms detailing his suffering and requesting medical treatment.  Each medical request was ignored by DOE nurse and DOE nursing staff.

32.     By failing to test and treat Mr. Brink for COVID-19, DOE nurse was the moving force in Mr. Brink developing GBS and falling unconscious to suffer from two herniated discs.  This failure to act put Mr. Brink on a trajectory to succumb to worsening symptoms related to COVID-19 and GBS.

33.     On August 18, 2022, Mr. Brink was transported to court for a hearing. Mr. Brink informed his public defender that he had likely contracted COVID-19 and was feeling very lightheaded and faint.  Mr. Brink was excused from court and taken back to the court holding cell.  Mr. Brink informed several DOE deputies of his illness and specifically his lightheadedness and body weakness.  Mr. Brink told DOE deputies that he thought he contracted COVID-19.  Mr. Brink asked for medical treatment from the DOE deputies but each DOE deputy called Mr. Brink a liar.  Mr. Brink begged several DOE deputies to escort him back to his housing unit, but each deputy continued to ignore Mr. Brink's serious medical needs.

8

COMPLAINT                                                          CASE NO.

34. After asking every deputy that came into the court holding area for help, Mr. Brink was ultimately taken back to his housing unit by DOE deputy without first receiving medical intervention. Prior to being escorted to his cell, Mr. Brink again told DOE deputy that he was feeling very faint and feverish and that he was feeling too weak to walk. Mr. Brink specifically asked to go to medical first but DOE deputy again told Mr. Brink he was lying and intentionally denied Mr. Brink medical treatment yet again.

35. As Mr. Brink walked up the staircase of the housing module, he fainted and fell to the ground. Mr. Brink remained unconscious and was transferred to the hospital.

36. Mr. Brink woke up in the hospital with little to no feeling below his waist. On that same day, the hospital tested Mr. Brink and confirmed that he contracted COVID-19.

37. The hospital diagnosed Mr. Brink with Guillain-Barre Syndrome ("GBS"), which was a direct result from Mr. Brink's untreated COVID-19 infection. According to the Mayo Clinic, GBS is a rare disorder in which one's immune system attacks the nerves. Weakness and tingling are usually the first symptoms, but those sensations quickly spread, paralyzing parts of the body. While recovery may take up to several years, most people are able to walk again six months after symptoms first started. Some people may have lasting effects from it, such as weakness, numbness, or fatigue. According to the National Institutes of Health, "COVID-19 has been shown to be associated with a lot of neurological complications, of whom GBS is an important post-infectious consequentiality." The treatment for GBS is continuous intravenous immunoglobulin treatment, which Mr. Brink received for eight days while being treated at the hospital.

38. As a result of GBS, Mr. Brink had no feeling below his waist. The hospital informed Mr. Brink that GBS caused Mr. Brink to fall unconscious. The fall itself resulted in two herniated disks.

9

COMPLAINT                                                                 CASE NO.

39.    Had Mr. Brink been promptly and adequately tested, treated, and isolated, his symptoms would have been treated and he would not have developed GBS, and at the very least would have been housed in isolation thereby preventing his fall and herniated discs.

40.    At discharge, Mr. Brink was prescribed a wheelchair, as he could not walk without it.  Mr. Brink was told by the hospital that he would need to be evaluated by a neurologist within 24 hours.  Mr. Brink was also informed that he would require intense physical therapy if he wanted to walk again.  DOE nurse knew this information via the hospital discharge instructions and is duty-bound to ensure that Mr. Brink receives the treatment ordered by the hospital.  The discharge instructions explicitly identified that the neurology consultation was for the Guillain-Barre Syndrome.  However, DOE nurse failed to ensure Mr. Brink received a neurological consultation or physical therapy, thereby prolonging and worsening Mr. Brink's partial paralysis.

41.    Despite Mr. Brink being discharged in a wheelchair and having no ability to walk under his own power, DOE nurse and DOE classification deputy failed to house Mr. Brink in ADA or a wheelchair-complaint cell despite medical requests that Mr. Brink be administered a wheelchair.

42.    On or around August 27, 2022, Mr. Brink attempted to transfer himself from the toilet back to the wheelchair.  However, during the transition, because the cell was not wheelchair complaint, Mr. Brink fell, slamming his head against the table and re-injuring his back.  After being unconscious for a few minutes, Mr. Brink woke up to his cellmate pushing the emergency call button for medical assistance.  The cellmate was yelling "mandown."

43.    Based on information and belief, other inmates also pressed their call button to no avail.  Mr. Brink was ignored for 45 minutes.  Ultimately, Mr. Brink was transferred to the hospital.  He was told that the fall resulted in a fractured vertebrate and a concussion causing mild brain trauma.  Mr. Brink also lost a tooth

10

COMPLAINT                                                        CASE NO.

a result of slamming into the table. Following this hospitalization, Mr. Brink was again housed in a non-ADA complaint cell.

44.    For the remainder of his detention, DOE nurse continued to deny Mr. Brink a referral for a neurology consultation and physical therapy.

45.    Mr. Brink remained wheelchair bound for nearly a year, living in pain and discomfort. He also suffered emotionally and mentally thinking that he may not ever walk again. As of today's date, Mr. Brink has use of his lower extremities but still suffers from weakness and numbness in his legs.

46.    Accordingly, Plaintiff is entitled to monetary damages pursuant to 42 U.S.C. section 1983 to compensate him for his injuries and for the violation of his Constitutional and civil rights.

47.    In addition to compensatory, economic, consequential, and special damages, Plaintiff is entitled to attorney's fees and punitive damages against each DOEs under 42 U.S.C. section 1983, in that the actions of each were done with malice and oppression, and with the intent to violate Plaintiff's right, or was done with a reckless disregard or wanton disregard for Mr. Brink's constitutional rights.

## V.

## SECOND CAUSE OF ACTION

**Interference with Right By Threat, Intimidation, or Coercion –**

**Bane Act - Civil Code Section 52.1**

**[By Jeremy Brink Against DOE Defendants 1-10 and San Diego County]**

48.    Plaintiff realleges and incorporates by reference all paragraphs stated above, as though fully set forth herein. Plaintiff brings this claim based on the claims set forth in this complaint.

49.    The Bane Act provides a civil cause of action against anyone who "interferes by threat, intimidation, or coercion … with the exercise or enjoyment … of rights secured by the Constitution or laws of the United States, or of the rights secured by the Constitution or laws of this state." (§ 52.1, subd. (a); see id., subd.

COMPLAINT                                                    CASE NO.

(b).) "The essence of a Bane Act claim is that the defendant, by the specified improper means (i.e., 'threats, intimidation or coercion'), tried to or did prevent the plaintiff from doing something he or she had the right to do under the law or to force the plaintiff to do something that he or she was not required to do under the law." *Austin B. v. Escondido Union School Dist.*, 149 Cal.App.4th 860, 883 (2007).

50.   In the Ninth Circuit, Bane Act claims relating to inadequate medical care in a correctional setting, controlling law states, with regard to coercive conduct, "at the pleading stage, the relevant distinction for purposes of the Bane Act is between intentional and unintentional conduct." *M.H. v. County of Alameda* (N.D. Cal. 2013) 90 F. Supp. 3d 889, 898 Courts have equated the "[t]hreat, intimidation, or coercion" requirement to "intentional . . . conduct." *Id.* at 898. "That intent requirement is satisfied where the defendant allegedly acted with '[r]eckless disregard of the right at issue.'" *Cornell v. City and County of San Fransisco* (1st Dist. 2017) 17 Cal. App. 5th at 804.

51.   As set forth above in detail, DOE nurse knew Mr. Brink had COVID-19 symptoms, knew his cellmate had tested positive for COVID-19, and knew Mr. Brink had a fever of 102.1, yet DOE nurse intentionally told Mr. Brink "you're ok," knowing that he would certainly face severe symptoms and/or possibly death if not properly treated.  Despite this knowledge, DOE nurse failed to act in any way.  In fact, DOE nurse did not provide any treatment and did not follow-up with Mr. Brink in the days leading to his fall despite policy obligations to do so and despite two medical request forms submitted by Mr. Brink.

52.   Similarly, DOE nurse intentionally denied Mr. Brink the urgent neurology referral as ordered by the hospital and denied him a referral for physical and occupational therapy thereby knowingly denying him the treatment necessary if he was going to be able to walk again.  Mr. Brink attempted to perform his own physical therapy inside the cell to mitigate any further physical injuries.

/ / /

12

COMPLAINT                                                    CASE NO.

53.     DOE deputies are equally responsible for failing to provide adequate medical care, or at least summoning adequate medical care, despite Mr. Brink's looking like he's on death's door and stating he is suffering from severe COVID-19 symptoms.  In fact, DOE deputies not only failed to summon medical care, they called Mr. Brink a liar and sent him back to the holding cell without so much as a brief medical assessment.

54.     These acts and omissions, directly and proximately lead to Mr. Brink losing consciousness and falling in the housing module.  Had Mr. Brink been promptly and adequately tested, treated, and isolated, his symptoms would have been treated and he would not have developed GBS, and at the very least would have been housed in isolation thereby preventing his fall and herniated discs.

55.     Moreover, had Mr. Brink been housed in an ADA or wheelchair complaint cell, as requested by jail medical staff, Mr. Brink would not have suffered from a fractured vertebrae and concussion.  Based on information and belief, DOE classification deputy did not house Mr. Brink in an ADA cell because he thought he was lying about needing a wheelchair.

56.     In sum, Plaintiff has a guaranteed right to adequate medical care.  As alleged above, by their acts and omissions, Mr. Brink was denied necessary medical treatment and housing, but DOE defendants intentionally and knowingly denied Mr. Brink adequate treatment and care.

57.     For the reasons set forth above, the County is vicariously liable for Defendants' wrongful and tortious conduct.

58.     The intentional and callous conduct alleged above was intended to cause Mr. Brink physical pain and emotional distress.  As a result of these acts, Plaintiff suffered the injuries and damages described in the above paragraphs, entitling him to damages in an amount to be proven at trial, and in accordance with Civil Code section 52.1, including attorney's fees and punitive damages.

/ / /

13

COMPLAINT                                                      CASE NO.

## VI.

## THIRD CAUSE OF ACTION

**[Failure to Provide Reasonable Accommodations to Incarcerated people with Disabilities – ADA, Rehabilitation Act, Unruh Act, Cal. Civ Code §§51 *et seq.*, California Government Code Claim §1135]**

**[By Jermey Brink Against DOE Defendants]**

59.     Plaintiff realleges and incorporates by reference all paragraphs stated above, as though fully set forth herein.

60.     Under controlling law, the County, must create and maintain a system to adequately identify and treat inmates with known disabilities.  The County had a disability program that is maintained for the benefit of physically disabled persons who need assistive equipment, and proper housing accommodations, for mobility purposes.

61.     All DOE defendants had an obligation under federal and state law to provide persons with physical disabilities with an equal opportunity to benefit from all programs, services, and activities.

62.     Mr. Brink's physical limitation in not being able to mobilize without a wheelchair is a recognized physical disability under the ADA.

63.     DOE nurse and classification deputy knew of this disability as it was set forth in the hospital medical discharge instructions and in ordered by a county nurse.  However, the ADA reasonable accommodations did not follow because the DOE classification deputy unreasonably believed Mr. Brink was lying.

64.     The intentional and repeated denial of medical accommodations on the part of all DOE defendants equates to coercion.

65.     As detailed above, all Defendants' failure to provide medical accommodations to Mr. Brink in the form ADA or wheelchair complaint housing accommodations and physical therapy is a violation of Mr. Brink's rights under the constitution as a physically disabled citizen.

14

COMPLAINT                                                                 CASE NO.

66. DOE Defendants' conduct was done for the sole purpose of causing severe harm, distress, injury, fear, and pain, or at the very least, was done in reckless disregard of that probability, as DOE Defendants knew Mr. Brink required adequate housing accommodations or would likely suffer from further serious injuries.

67. As a result of these acts, Plaintiff suffered from prolonged physical pain, emotional distress, and prolonged immobility, entitling him to damages in an amount to be proven at trial.

68. In committing the acts alleged above, DOE Defendants acted maliciously and/or were guilty of a wanton and reckless disregard for the rights and feelings of Plaintiff and by reason thereof he is entitled to exemplary and punitive damages in an amount to be proven at trial.

## VII.

## FOURTH CAUSE OF ACTION

### Negligence – Failure to Summon Care

**[By Jermey Brink Against DOE Defendants and the County of San Diego]**

69. Plaintiff realleges and incorporates by reference all paragraphs stated above, as though fully set forth herein.

70. As alleged in detail above, DOE Defendants were charged with the duty to act in accordance with the laws of State and the Constitution. Meaning, they are duty bound to summon medical care if they are aware of an inmate that is in need of immediate medical care. See California Government Code section 845.6.

71. As a result of each DOE Defendant's failure to summon immediate medical care, Mr. Brink developed a neurologic disorder that caused him extreme anguish ultimately resulting in Mr. Brink falling unconscious causing him to sustain two herniated discs. The development of GBS occurred due to DOE nurse's failure to treat Mr. Brink for COVID-19. Further, DOE Defendants' failure to provide Mr.

/ / /

15

COMPLAINT                                                                 CASE NO.

Brink with the proper medical housing accommodation caused Mr. Brink to sustain further injuries in the form of a fractured vertebra and mild brain trauma.

72.    Pursuant to California Government Code Section 815.2(a), the County of San Diego itself is liable for the misconduct of its employees when performed within the scope of employment.  All conduct alleged herein was performed within the scope of Defendants' employment.

73.    Additionally, pursuant to California Government Code section 845.6, the County itself is liable for its employee's failure to summon immediate medical care for an inmate in need of immediate medical assistance.  As alleged above, all conduct set forth herein was performed within the scope of Defendants' employment.

74.    Defendants' conduct was done for the sole purpose of causing severe harm, distress, injury, fear, and pain, or at the very least, was done in reckless disregard of that probability.

75.    As a result of these acts, Plaintiff suffered the injuries and damages described above, entitling him to damages in an amount to be proven at trial.

76.    In committing the acts alleged above, Defendants acted maliciously and/or were guilty of a wanton and reckless disregard for the rights and feelings of Plaintiff and by reason thereof he is entitled to exemplary and punitive damages in an amount to be proven at trial.

## VIII.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for judgement against Defendants, for each and every cause of action, as follows:

1.    For compensatory, general and special damages against each defendant, jointly and severally, in an amount according to proof;

/ / /

/ / /

16

COMPLAINT                                                    CASE NO.

2.    For punitive and exemplary damages against each individually named defendant in their individual capacity in an amount appropriate to punish defendants and deter others from engaging in similar misconduct;

3.    For costs and reasonable attorney's fees pursuant to 42 U.S.C. section 1988, California Civil Code Section 52.1, and as otherwise authorized by statute or law;

4.    For any further relief that the Court may deem appropriate.

## IX.

## DEMAND FOR JURY TRIAL

Demand is hereby made by Mr. Brink for a jury trial.

Respectfully submitted,

**PHG Law Group**

Dated:  September 22, 2023

by:  s/ Danielle R. Pena
Danielle R. Pena, Esq.
dpena@PHGLawGroup.com
Attorneys for Plaintiff Jermey Brink

17

COMPLAINT                                                    CASE NO.