1  Danielle R. Pena, Esq., SBN 286002
   dpena@PHGLawGroup.com
2  PHG Law Group
   501 West Broadway, Suite 1480
3  San Diego, CA 92101
   Telephone:  (619) 826-8060
4  Facsimile:   (619) 826-8065

5  Attorneys for Plaintiff Jeremy Brink

6

7

8                    UNITED STATES DISTRICT COURT

9                  SOUTHERN DISTRICT OF CALIFORNIA

10

11  JEREMY BRINK, Individually,          Case No. 23-cv-1756 DMS (SBC)

12                          Plaintiffs,   **OPPOSITION TO DEFENDANT
                                          COUNTY OF SAN DIEGO'S MOTION
13         v.                             TO DISMISS PLAINTIFF'S FIRST
                                          AMENDED COMPLAINT**
14  COUNTY OF SAN DIEGO; DOE
    SHERIFF'S DEPUTIES 1-5,              Dept.:  13A
15  Individually; DOE SHERIFF'S         Judge:  Hon. Dana M. Sabraw
    NURSES 6-10, Individually; AND
16  DOES 11-15, Individually, Inclusive,

17                          Defendants.

18

19

20

21

22

23

24

25

26

27

28

OPPOSITION TO MTD                      CASE NO. 23CV1756 DMS (SBC)

**TABLE OF CONTENTS**

I. INTRODUCTION ..................................................................................7

II. STANDARD OF LAW ........................................................................8

III. THE FOURTEENTH AMENDMENT APPLIES BECAUSE MR. BRINK
HAD NOT YET BEEN FOUND TO VIOLATE THE TERMS OF HIS
PROBATION PRIOR TO HIS INJURIES ................................................9

    *A.     Under the Fourteenth Amendment, Mr. Brink Adequately Alleged
Deliberate Indifference* ........................................................11

    *B.     Under the Eighth Amendment, Mr. Brink Adequately Alleged Deliberate
Indifference*...........................................................................14

IV. DEFENDANTS ARE NOT ENTITLED TO QUALIFIED IMMUNITY ........15

V. SPECIFIC FACTS SUPPORT MR. BRINK'S DOE ALLEGATIONS.............18

VI. MR. BRINK'S BANE ACT CLAIMS ARE VIABLE ....................................20

VII. THE COUNTY IS LIABLE FOR NEGLIGENCE PURSUANT TO
STATUTE.............................................................................................21

VIII. MR. BRINK'S ADA CLAIMS ARE VIABLE .............................................22

IX. LEAVE TO AMEND ...........................................................................23

X. CONCLUSION....................................................................................24

OPPOSITION TO MTD                    CASE NO. 23CV1756 DMS (SBC)

# TABLE OF AUTHORITEIS

## CASES

*Ashcroft v. Iqbal*
    555 U.S. 662 (2009) ............................................................................8

*Austin B. v. Escondido Union School Dist.*
    149 Cal.App.4th 860 (2007) ............................................................20

*Bell Atl. Corp. v. Twombly*
    550 U.S. 544 (2007) ............................................................................8

*Castro v. Cnty. of Los Angeles*, 833 F.3d 1060, 1070 (9th Cir. 2016) ............ 12, 16

*Clark v. Poulton*
    963 F.2d 1361 (10th Cir. 1992) ......................................................10

*Crump v. City & County of San Francisco*
    2007 U.S. Dist. LEXIS 58768 (N.D. Cal. Aug. 1, 2007) ....................8

*Cuda v. Emples./Contrs./Agents*
    2019 U.S. Dist. LEXIS 78849, 2019 WL 2062945, at *3-4 (D. Haw. 2019) .................................................................................18

*D.V. v. City of Sunnyvale*
    65 F. Supp. 3d 782 (N.D. Cal. 2014)................................................20

*DC Solar Sols., Inc. v. Lovato* (*In re Double Jump, Inc.*)
    2022 Bankr. LEXIS 2644, *1 (2022) .................................................9

*Di-az v. Tesla, Inc.*
    2019 U.S. Dist. LEXIS 222543 at *14 (N.D. Cal. 2019).................21

*Estate of Wilson v. Cnty. of San Diego*
    2022 U.S. Dist. LEXIS 45765, *9 (Cal. S.D. 2022) ........................11

*Farmer v. Brennan*
    511 U.S. 825 (1994) ..........................................................................15

*Gant v. County of L.A.*
    772 F.3d 608 (9th Cir. 2014)............................................................20

OPPOSITION TO MTD                    CASE NO. 23CV1756 DMS (SBC)

*Gillespie v. Civiletti*

    629 F.2d 637 (9th Cir. 1980) ........................................................................... 19

*Gordon v. Cnty. of Orange*

    888 F.3d 1118 (9th Cir. 2018) ....................................................................... 12

*Hamilton v. Lyons*

    74 F.3d 99 (5th Cir. 1996) ............................................................................. 10

*Hanington v. Multnomah Cnty.*, 593 F. Supp. 3d 1022, 1032 (Or.

    2022) ..................................................................................................... 10, 11

*Hope v. Pelzer*

    536 U.S. 730 (2002) ...................................................................................... 16

*Hunt v. Dental Dep't*

    65 F.2d 198 (9th Cir. 1989) ........................................................................... 17

*Jackson v. McIntosh*

    90 F.3d 330 (9th Cir. 1996) ........................................................................... 17

*Jett v. Penner*

    439 F.3d 1091 (9th Cir. 2006) ....................................................................... 17

*Johnson v. Knowles*

    113 F.3d 1114 (9th Cir. 1997) ......................................................................... 8

*Keates v. Koile*

    883 F.3d 1228 (9th Cir. 2018) ....................................................................... 18

*Khoja v. Orexigen Therapeutics, Inc.*

    899 F.3d 988 (9th Cir. 2018) ........................................................................... 9

*Kutrip v. City of St. Louis*

    329 F. App'x 683 (8th Cir. 2009) .................................................................. 23

*Leatherman v. Tarrant County Narcotics Intelligence and*

    *Coordination Unit*

    507 U.S. 163 (1993) ........................................................................................ 8

*Luttrell v. Hart*

    2020 U.S. Dist. LEXIS 173856, *15 (Cal. N.D. 2020)....................................21

*M.B. v. Cal. Dep't of Corr. & Rehab.*

    2018 U.S. Dist. LEXIS 143821, *21 (Cal. E.D. 2018) ....................................22

*M.H. v. County of Alameda*

    90 F. Supp. 3d 889 (N.D. Cal. 2013)................................................................21

*Martin v. Warren Cnty., Ky.*

    799 F. App'x 329, 334 (6th Cir. 2020)............................................................10

*N. Star Int'l v. Ariz. Corp. Comm'n*

    720 F.2d 578, 581 (9th Cir. 1983) ....................................................................8

*NL Industries, Inc. v. Kaplan*

    792 F.2d 896 (9th Cir. 1986 ..............................................................................8

*Paith v. Cnty. of Wash.*

    394 F. App'x 858, 860 n.2 (3d Cir. 2010)........................................................10

*Paugh v. Uintah Cnty.*

    No. 2:17-cv-01249 JNP, 2020 U.S. Dist. LEXIS 145141, 2020 WL

    4597062, at *19-20 (D. Utah Aug. 11, 2020) ..................................................10

*Pierce v. Cnty. of Marin*

    291 F. Supp. 3d 982 (N.D. Cal. 2018)..............................................................20

*Ressy v. King Cty.*

    520 F. App'x 554 (9th Cir. 2013)....................................................................10

*Robertson v. Las Animas Cty. Sheriff's Dep't*

    500 F.3d 1185 (9th Cir. 2007) ........................................................................22

*San Diego Branch of NAACP v. County of San Diego*

    2019 U.S. Dist. LEXIS 13375 at *12 (S.D. Cal. 2019) ..................................20

*Sandoval v. Ctny of San Diego*

    985 F.3d 657 (9th Cir. 2021) ....................................................................passim

*Sedore v. Landfair*
    2023 U.S. Dist. LEXIS 231744, *23-24 (Mich. E.D. 2023)............................23

*Silva v. Mitchell*
    2021 U.S. Dist. LEXIS 188958, *47 (Il. N.D. 2021)................................19, 22

*Simmons v. Navajo Cty., Ariz.*
    609 F.3d 1011 (9th Cir. 2010)........................................................10

*Thomas v. Martija*
    991 F.3d at 767 (7th Cir. 2021) .....................................................19

*United States v. Georgia*
    546 U.S. 151, 126 S. Ct. 877, 163 L. Ed. 2d 650 (2006) ..................................22

*Waddell v. Minton*
    2020 U.S. Dist. LEXIS 105090, *4 (Cal. N.D.)...........................................11

*Wakefield v. Thompson*
    177 F.3d 1160 (9th Cir. 1999)........................................................19

*Weishaar v. Cnty. of Napa*
    2016 U.S. Dist. LEXIS 173833, *15 (N.D. Cal 2016)....................................10

*Wilk v. Neven*
    956 F.3d at 1148 (9th Cir. 2020) ......................................................16

## STATUTES

Federal Rule of Civil Procedure 8(a)(2) ..................................................8

Government Code Section 815.2.........................................................20

Government Code Section 845.6.........................................................22

## RULES

Federal Rule of Civil Procedure 12(b)(6)............................................8, 9

OPPOSITION TO MTD                    CASE NO. 23CV1756 DMS (SBC)

# I.

## **INTRODUCTION**

The County contends Mr. Brink has not adequately alleged a constitutional violation.  The County further argues that the stricter Eighth Amendment applies because Mr. Brink's probation was summarily revoked two weeks prior to the alleged injuries.  However, that is an extraneous fact and cannot be judicially noticed.  Regardless, the Ninth Circuit has found that the Fourteenth Amendment applies when a person in custody for violating probation has not yet received an evidentiary hearing and found to violate the terms of their probation.  It is undisputed that at the time Mr. Brink sustained the alleged injuries, he did not have an evidentiary hearing nor was there a finding that he violated the terms of his probation.  For that reason, the Fourteenth Amendment applies.

The County further argues that Plaintiff did not adequately allege facts to support a constitutional violation, and that even if he did establish a violation, there was not clearly established law regarding the "particular facts" alleged.  However, recently the Ninth Circuit held in *Sandoval* that "a prison official who is aware that an inmate is suffering from a serious acute medical condition violates the Constitution when he stands idly by rather than responding with reasonable diligence to treat the condition."  The *Sandoval* court specifically found that pointing to a similar or identical case is not required.  This *Sandoval* rule of law applies to the facts alleged in the First Amended Complaint [Dkt. 6] ("FAC"), which alleges that each DOE defendant knew Mr. Brink was suffering from severe symptoms of Covid-19, and that he was too weak to walk, yet each defendant ignored Mr. Brink's medical distress and intentionally denied him medical treatment.  This denial or delay of medical care resulted in two broken vertebrae, the development of GBS, and eight months of partial paralysis.  For these reasons, and based on the below analysis, Defendant's motion should be denied in its entirety.

OPPOSITION TO MTD                    CASE NO. 23CV1756 DMS (SBC)

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## II.

## <u>STANDARD OF LAW</u>

Federal Rule of Civil Procedure 12(b)(6) motion to dismiss a cause of action should only be granted where the cause of action fails to state a claim upon which relief can be granted.  See, *N. Star Int'l v. Ariz. Corp. Comm'n,* 720 F.2d 578, 581 (9th Cir. 1983).  In considering whether the complaint sufficiently states a claim, a court takes all material allegations as true and construes them in the light most favorable to the plaintiff.  *See*, *NL Industries, Inc. v. Kaplan,* 792 F.2d 896, 898 (9th Cir. 1986).  Factual allegations need not be detailed, they simply must be sufficient to "raise a right to relief above the speculative level" and reach a minimum threshold of plausibility.  *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555, 558 (2007).  The plausibility threshold is crossed when the plaintiff pleads factual content sufficient for the court to "draw a reasonable inference" that the defendant is liable for the alleged misconduct.  *Ashcroft v. Iqbal,* 555 U.S. 662, 678 (2009).  A claim should only be dismissed when it appears beyond doubt that there is no set of facts a plaintiff can prove in support of their claim that would entitle them to relief.  See, *Johnson v. Knowles,* 113 F.3d 1114, 1117 (9th Cir. 1997).

Allegations under Section 1983 do not impose a heightened pleading standard.  *See Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit,* 507 U.S. 163, 168 (1993).  Rather, claims against municipalities under Section 1983 operate under the "notice" pleading standard set out in Federal Rule of Civil Procedure 8(a)(2), which only requires the pleader give the defendant "fair notice what the plaintiff's claim is" and "the grounds upon which it rests." *Crump v. City & County of San Francisco*, 2007 U.S. Dist. LEXIS 58768 (N.D. Cal. Aug. 1, 2007).

/ / /

/ / /

/ / /

OPPOSITION TO MTD                    CASE NO. 23CV1756 DMS (SBC)

### III.

### THE FOURTEENTH AMENDMENT APPLIES BECAUSE MR. BRINK HAD NOT YET BEEN FOUND TO VIOLATE THE TERMS OF HIS PROBATION PRIOR TO HIS INJURIES

The County argues that the stricter deliberate indifference standard of the Eighth Amendment should apply, rather than the Fourteenth Amendment, because Mr. Brink's probation was "summarily revoked" on August 1, 2022.  However, the County admits that Mr. Brink's evidentiary hearing for the probation violation was continued to a date after the date of injury.  (Motion to Dismiss [Dkt. 7-1] ("MTD"), 6:1-7.)  (See Exhibit E to Request for Judicial Notice in Support of MTD [Dkt. 7-2], evidentiary hearing continued to August 23, 2022.)  The date of injury as alleged in the FAC was August 14 through August 18, 2022.

First, this argument should be summarily rejected because the type of facts the County is relying on to make its argument cannot be judicially noticed.  "On a Federal Rule of Civil Procedure 12(b)(6) motion to dismiss, when a court takes judicial notice of another court's opinion, it may do so not for the truth of the facts recited therein, but for the existence of the opinion, which is not subject to reasonable dispute over its authenticity.  Moreover, just because the document itself is susceptible to judicial notice does not mean that every assertion of fact within that document is judicially noticeable for its truth."  *DC Solar Sols., Inc. v. Lovato* (*In re Double Jump, Inc.*), 2022 Bankr. LEXIS 2644, *1 (2022), quoting *Khoja v. Orexigen Therapeutics, Inc*., 899 F.3d 988 (9th Cir. 2018).

Next, regardless of whether this Court takes judicial notice of the fact that Mr. Brink's probation was summarily revoked on August 1, 2022, it is undisputed that Mr. Brink did not receive an evidentiary hearing pertaining to the probation violation prior to the date of injury.  The question then becomes, which standard applies when a probation violation charge has yet to be adjudicated?

/ / /

9

This question was put before the *Weishaar* court, in *Weishaar v. Cnty. of Napa*, 2016 U.S. Dist. LEXIS 173833, *15 (N.D. Cal 2016). In *Weishaar*, the plaintiff argued his Section 1983 claims should be analyzed under the Fourteenth Amendment because although the plaintiff was "arrested for violating probation, the plaintiff had a 'conditional liberty interest' and would have been entitled to a hearing." *Weishaar,* at*15. The *Weishaar* court found:

> The court thinks that it must deem Mr. Foster a pretrial detainee. The Ninth Circuit's decision in *Ressy v. King Cty.*, 520 F. App'x 554 (9th Cir. 2013), does treat the § 1983 claim of a prisoner who was being held in "pre-hearing detention for a probation violation," as the grievance of a "pretrial detainee[]," properly assessed under the Fourteenth Amendment. See *Id.* at 554-55 ("[T]he Fourteenth Amendment's Due Process Clause, rather than the Eighth Amendment's protection against cruel and unusual punishment, applies to pretrial detainees . . . .") (quoting *Simmons v. Navajo Cty., Ariz.*, 609 F.3d 1011, 1017 (9th Cir. 2010)). *Weishaar*, at *16.

Similarly, the court in *Hanington v. Multnomah Cnty.*, 593 F. Supp. 3d 1022, 1032 (Or. 2022), clarified that an individual in custody for violating the terms of probation or parole is considered a pre-trial detainee if she has not had an evidentiary hearing on the violation. See *Hanington,* at 1032. The court in *Hanington* found:

> However, in a more recent opinion, the Ninth Circuit has suggested, referring to an individual accused of a probation violation as a pretrial detainee. See *Ressy v. King Cnty*, 520 F. App'x 554, 555 (9th Cir. 2013) (unpublished). Likewise, other circuits have generally found that individuals arrested for suspected parole violations are pretrial detainees subject to the Fourteenth Amendment. See *Martin v. Warren Cnty.*, Ky., 799 F. App'x 329, 334, 337 (6th Cir. 2020); *Paith v. Cnty. of Wash.*, 394 F. App'x 858, 860 n.2 (3d Cir. 2010); *Hamilton v. Lyons*, 74 F.3d 99, 104-06 (5th Cir. 1996); *Clark v. Poulton*, 963 F.2d 1361, 1364-65 (10th Cir. 1992); see also *Paugh v. Uintah Cnty.*, No. 2:17-cv-01249 JNP, 2020 U.S. Dist. LEXIS 145141, 2020 WL 4597062, at *19-20 (D. Utah Aug. 11, 2020). *Hanington*, at 1032.

/ / /

/ / /

10

The *Hanington* court offered a clear and concise explanation for the rationale explaining why the Fourteenth Amendment should apply rather than the Eighth Amendment:

> Mr. Hanington was arrested on suspicion of violating the conditions of his parole—he had yet to be found to have done so. Though Mr. Hanington was not entitled to a jury trial on his suspected parole violation, he did have a right to a revocation hearing before a judge. Because that hearing had yet to occur, Mr. Hanington had not received the process he was due under the Fourteenth Amendment. Thus, any punishment inflicted on Mr. Hanington based on his alleged parole violation would violate the Fourteenth Amendment. *Id*. at 1032-1033.

Here, Mr. Brink had yet to receive an evidentiary hearing and therefore had not received the due process of being found to have violated the terms of his probation.  Based on these facts, the Fourteenth Amendment should apply.

The County cites to *Waddell v. Minton*, 2020 U.S. Dist. LEXIS 105090, *4 (Cal. N.D.), but that case is distinguishable because the plaintiff never argued the Fourteenth Amendment applied and never argued that he had yet to receive an evidentiary hearing finding that plaintiff violated the terms of his probation.  This same argument applies to *Estate of Wilson v. Cnty. of San Diego*, 2022 U.S. Dist. LEXIS 45765, *9 (Cal. S.D. 2022) ("Although the FAC does not allege whether Wilson's flash incarceration was imposed for his violating parole, probation, or some other form of post release supervision, the distinction does not bear upon the pending Motions.")  Similar, the County cites to *Sandoval v. Cty. of San Diego,* 985 F.3d 657, 667 (9th Cir. 2021), in support of their argument, however, *Sandoval*, who was awaiting an evidentiary hearing on the probation violation, was analyzed under the Fourteenth Amendment.

A.   *Under the Fourteenth Amendment, Mr. Brink Adequately Alleged Deliberate Indifference*

Because Mr. Brink was a pretrial detainee at times relevant to this action, his claim of inadequate medical care arises under the Fourteenth Amendment and is evaluated under an objective deliberate indifference standard.  See *Gordon v. Cnty.*

11

*of Orange*, 888 F.3d 1118, 1124-25 (9th Cir. 2018) (citing *Castro v. Cnty. of Los Angeles*, 833 F.3d 1060, 1070 (9th Cir. 2016) (en banc)).

The elements of such a claim are: "(i) the defendant made an intentional decision with respect to the conditions under which the plaintiff was confined; (ii) those conditions put the plaintiff at substantial risk of suffering serious harm; (iii) the defendant did not take reasonable available measures to abate that risk, even though a reasonable official in the circumstances would have appreciated the high degree of risk involved—making the consequences of the defendant's conduct obvious; and (iv) by not taking such measures, the defendant caused the plaintiff's injuries." Id. at 1125 (citing *Castro*, 833 F.3d at 1071). "With respect to the third element, the defendant's conduct must be objectively unreasonable, a test that will necessarily 'turn[ ] on the facts and circumstances of each particular case.'" *Gordon*, 888 F.3d at 1125 (quoting Castro, 833 F.3d at 1071). A defendant's "mere lack of due care" is insufficient to state a Fourteenth Amendment claim. *Id*. Thus, a plaintiff must "prove more than negligence but less than subjective intent— something akin to reckless disregard." *Id*.

The FAC alleges that DOE nurses and deputies "intentionally placed Mr. Brink at risk for contracting COVID-19 when they failed to follow County policy by failing to remove and isolate the cellmate that had tested positive for COVID-19, and by failing to sanitize the housing module and administer PPE to other inmates in the housing module." (FAC, ¶ 29.) DOE nurses and deputies were supposed to remove the affected individual from the module and place the remaining inmate[s] in the module on quarantine precautions for five days. The module would have been sanitized and each inmate would have been provided a KN-95 mask and gloves. Each inmate would receive additional observation and treatment. Finally, each inmate would have to be evaluated and cleared by the medical staff." (FAC, ¶ 29.)

/ / /

Because that did not happen, "Two days later, Mr. Brink started to feel ill with COVID-19 related symptoms. He submitted a medical request form on or about August 13, 2022, seeking testing and treatment for his COVID-19 symptoms." (FAC, ¶ 30.) "At approximately 3:00 a.m. on August 14, 2022, DOE nurse came to speak to Mr. Brink. Mr. Brink told DOE nurse he thought he contracted COVID-19 because the inmate in the cell over had tested positive a day or two before. Mr. Brink also informed DOE nurse that he was suffering from severe chills, sneezing, a sore throat, body weakness, and extreme light-headedness. He specifically told the nurse, 'When I stand up my cheeks tingle and I feel faint.'" DOE nurse took Mr. Brink's temperature, which was recorded at 102.1," and then left and provided no further care. (FAC, ¶ 31.)

As alleged, DOE nurse(s) were objectively indifferent to Mr. Brink contracting Covid-19, which each nurse knew was a serious medical condition. To establish that, Plaintiff points to the County's operative policies, which indicate what a reasonable nurse should have done under the circumstances. DOE nurse(s) were required to "immediately test and isolate inmates that test positive for COVID-19 and provide them with proper medical care." Due to Mr. Brink's fever and related symptoms, policy required that Mr. Brink be housed in SPUI ("Suspected Person Under Investigation") and immediately tested for COVID-19. (FAC, ¶ 31.) Once Mr. Brink tested positive for Covid-19, and displayed the symptoms alleged in the FAC, DOE nurse(s) should have housed him in a medical isolation cell so that he would be given constant medical monitoring and treatment. (FAC, ¶ 32.) Testing positive for COVID-19 also required Mr. Brink to receive "immediate action to provide patient stabilization until an individualized treatment plan is established by a clinical provider." Over the next two days, Mr. Brink submitted two additional medical request forms detailing his suffering and requesting medical treatment. Each medical request was ignored by DOE nurse(s).

/ / /

1    Similarly, the FAC alleges that DOE deputies knew Mr. Brink was

2    displaying severe signs and symptoms of COVID-19, and knew Mr. Brink was

3    pleading for medical treatment.  DOE deputies called Mr. Brink and a liar and

4    refused to summon medical care.  After pleading for hours, Mr. Brink was escorted

5    from court back to his cell, but DOE deputies intentionally denied taking Mr. Brink

6    to the jail infirmary or summoning medical care despite being told Mr. Brink was

7    extremely light-headed and too weak to walk.  (FAC, ¶¶ 37-38.)  This denial of

8    medical care also directly and proximately caused Mr. Brink to faint and fall down

9    the stairs, causing severe injuries.

10    Had DOE nurse(s) followed County policy, it would have likely prevented

11    Mr. Brink's symptoms from worsening.  At the very least, because inmates housed

12    in SPUI and COVID-19 modules are not permitted to be transported to court, Mr.

13    Brink would not have had the means and opportunity to faint and fall down the

14    stairs after being escorted back from court.  (FAC, ¶¶ 32, 34.)  Reasonable

15    treatment would have also prevented the contraction of GBS, partial paralysis for

16    eight months, and future wheelchair-related injuries.  (FAC, ¶¶ 40-44, 46-49.)

17    Furthermore, DOE nurse(s) also failed to adhere to the hospital discharge

18    instructions, which ordered that Mr. Brink receive a neurology consultation for the

19    GBS diagnosis and physical therapy.  This failure added and prolonged Mr. Brink's

20    pain, suffering, and paralysis.  (FAC, ¶ 45.)

21    Based on these facts, DOE nurse(s) and deputies were objectively indifferent

22    because each defendant failed to act reasonably knowing that Mr. Brink was

23    suffering from a serious medical condition yet failing to offer or summon medical

24    care.

25    **B.    _Under the Eighth Amendment, Mr. Brink Adequately Alleged_**

26    **_Deliberate Indifference_**

27    If this Court is not convinced that Mr. Brink was a pretrial detainee at the

28    time of his injuries, then the Eighth Amendment applies.  Even under this stricter

14

standard, Mr. Brink has adequately alleged deliberate indifference. The law provides that jail officials and medical providers can be held liable if their "acts or omissions [are] sufficiently harmful to evidence deliberate indifference to serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). This standard has two components.

The first prong is an objective showing: a plaintiff must allege facts demonstrating that he is "incarcerated under conditions posing a substantial risk of serious harm," <u>such as lack of medical care for serious health conditions</u>. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). The second component is a subjective showing—that the defendant acted with "deliberate indifference," which is "more than mere negligence," but "less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Id*. at 835. To satisfy the subjective component, a prisoner must show that a prison official was aware of but recklessly disregarded an excessive risk to an inmate's health. *Id*. at 838.

As detailed above, each DOE defendant knew Mr. Brink was suffering from severe symptoms of COVID-19, and that he was too weak to walk, yet each defendant ignored Mr. Brink's medical distress and intentionally denied him medical treatment. These facts as alleged support a finding that each defendant knew Mr. Brink was suffering from a serious medical condition and that each defendant displayed the objective and subjective intent to deny medical care.

## IV.

## DEFENDANTS ARE NOT ENTITLED TO QUALIFIED IMMUNITY

The County contends Plaintiff failed to establish that a constitutional violation occurred. However, as analyzed above, Plaintiff has adequately alleged that each defendant knew Mr. Brink was suffering from a serious medical condition (severe symptoms of COVID-19 and being too weak to walk, etc.) yet each defendant intentionally denied Mr. Brink medical care. Next, the County contends Plaintiff is required to "identify a precedential case where either (1) nurses; or (2)

15

housing staff were adjudged to have violated the Constitution *under circumstances similar* to those involving Mr. Brink and the Defendants here. Namely, Plaintiff must identify a case where an individual plaintiff presented (as Plaintiff alleges) with symptoms of COVID-19, and the individual's conditioned worsened due to jail staff's failure to do some unspecified act." (MTD, 11:22-27.) In other words, Defendants contend Plaintiff cannot point to an *identical* case proving that the constitutional right was clearly established in August of 2022. That is not the correct standard.

In *Sandoval v. Ctny of San Diego,* 985 F.3d 657 (9th Cir. 2021), the County attempted to use the same argument to persuade the Ninth Circuit that qualified immunity applied because there had never been a similar factual case on point to find that the constitutional right was clearly established at the time. In rejecting the nurses' qualified immunity argument, the Ninth Circuit held,

> To be sure, we have never before addressed the specific factual circumstances here, where a nurse is told that a patient is sweating, disoriented, and in need of a more thorough look but does nothing more than perform a quick 10-second blood test. But de Guzman is not entitled to qualified immunity simply because "the very action in question has [not] previously been held unlawful." *Hope v. Pelzer*, 536 U.S. 730, 739 (2002) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)). State "'[o]fficials can still be on notice that their conduct violates established law even in novel factual circumstances'—i.e., even without a prior case that had 'fundamentally similar' or 'materially similar' facts." *Wilk v. Neven*, 956 F.3d at 1148 (9th Cir. 2020) (quoting *Castro v. City of Los Angeles*, 833 F.3d at 1067 (9th Cir. 2016) ("The Supreme Court need not catalogue every way in which one inmate can harm another for us to conclude that a reasonable official would understand that his actions violated Castro's right.").

Following in the footsteps before it, the Ninth Circuit Court of Appeals reviewed the circuit precedent and found:

/ / /

/ / /

/ / /

16

Our cases make clear that prison officials violate the Constitution when they "deny, delay or intentionally interfere" with needed medical treatment. *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006). The same is true when prison officials choose a course of treatment that is "medically unacceptable under the circumstances." *Snow v. McDaniel*, 681 F.3d 978, 988 (9th Cir. 2012) (quoting *Jackson v. McIntosh*, 90 F.3d 330, 332 (9th Cir. 1996)), overruled on other grounds by Peralta, 744 F.3d 1076.

We have applied this standard on several occasions. In *Clement v. Gomez*, we held that correctional officers could be liable for failing to provide constitutionally adequate medical care when they knew that inmates had been exposed to pepper spray but waited four hours before allowing them to leave their cells to shower. 298 F.3d 898, 902, 904–05 (9th Cir. 2002). Similarly, in *Jett v. Penner*, we held that a doctor could be held liable for a constitutional violation when he knew that an inmate's thumb was fractured but failed to ensure that the fracture was set and cast. 439 F.3d at 1097–98; see also *Hunt v. Dental Dep't*, 865 F.2d 198, 200 (9th Cir. 1989) (plaintiff could establish a constitutional violation when prison officials were aware that he was suffering from bleeding gums and broken teeth as a result of broken dentures but "failed to take any action to relieve his pain or to prescribe a soft food diet until new dentures could be fitted"). The rule reflected in these decisions is clear: a prison official who is aware that an inmate is suffering from a serious acute medical condition violates the Constitution when he stands idly by rather than responding with reasonable diligence to treat the condition.

Using that framework, the *Sandoval* court found that the factual record established the DeGuzman was told "that Sandoval was sweating, tired, and disoriented, that 'there was still something going on,' and that [Sandoval] needed to be 'look[ed] at . . . more thoroughly.'"  In denying qualified immunity, the Court of Appeals found that the defendant "made essentially no effort to determine why Sandoval was suffering the symptoms, nor did he attempt to treat those symptoms. He then abandoned Sandoval for the remaining six hours of his shift and failed to pass along any information to the nurses who relieved him." *Sandoval v. Ctny of San Diego,* 985 F.3d at 680.

Notably, "when a district court dismisses a complaint for failure to state a claim based on a qualified immunity defense, courts of appeal consider whether the complaint alleges sufficient facts, taken as true, to support the claim that the

1    officials' conduct violated clearly established constitutional rights of which a

2    reasonable officer would be aware in light of the specific context of the case.  If the

3    operative complaint contains even one allegation of a harmful act that would

4    constitute a violation of a clearly established constitutional right, then plaintiffs are

5    entitled to go forward with their claims." *Keates v. Koile*, 883 F.3d 1228, 1232 (9th

6    Cir. 2018).

7        Here, similar to *Sandoval,* with respect to DOE nurses and deputies, they

8    each knew Mr. Brink's cellmate tested positive for COVID-19 but they did not

9    properly sanitize or treat the other inmates in the module.  DOE nurses and deputies

10   knew Mr. Brink was asking for medical help, stating verbally and via grievance

11   forms that he contracted COVID-19 and was suffering from severe symptoms.  He

12   told DOE nurses and deputies that he was too weak to walk.  Rather than

13   responding like a reasonable nurse or deputy, each defendant intentionally sat idle.

14   Accordingly, each defendant knew Mr. Brink was suffering from a serious medical

15   condition yet failed to summon or provide meaningful treatment.  For those

16   reasons, qualified immunity should be denied.

17                                    **V.**

18   **SPECIFIC FACTS SUPPORT MR. BRINK'S DOE ALLEGATIONS**

19       The County argues "The allegations against the DOES are so vague as to

20   failing to satisfy the pleading requirements.  As these allegations against DOE

21   Defendants underpin or inform all the claims in Plaintiffs' First Amended

22   Complaint, dismissal of the entire pleading is appropriate."  [MTD, 4:12-15.]  Mr.

23   Brink contends that specific factual allegations are tethered to specific individual

24   DOE defendants.

25       "A plaintiff may refer to unknown defendants as Defendant John Doe 1, John

26   Doe 2, John Doe 3, and so on, but he must allege specific facts showing how each

27   particular doe defendant violated his rights." *Cuda v. Emples./Contrs./Agents*, 2019

28   U.S. Dist. LEXIS 78849, 2019 WL 2062945, at *3-4 (D. Haw. 2019). "A plaintiff

                                       18

may also seek discovery to obtain the names of the Does and later amend his pleading in order to substitute the true names of those defendants, unless it is clear that discovery will not uncover their identities…" See *Wakefield v. Thompson*, 177 F.3d 1160, 1163 (9th Cir. 1999) (citing *Gillespie v. Civiletti*, 629 F.2d 637, 642 (9th Cir. 1980).

As detailed above, Mr. Brink specifically alleged that DOE nurses and deputies knew Mr. Brink's cellmate tested positive for COVID-19 but they did not properly sanitize or treat the other inmates in the module.  DOE nurses and deputies knew Mr. Brink was asking for medical help, stating verbally and via grievance forms that he contracted COVID-19 and was suffering from severe symptoms.  He told DOE nurses and deputies, verbally and via grievances, that he was suffering from severe symptoms of COVID-19 and was too weak to walk.  (FAC, ¶¶ 29, 31-34, 37-38.)  Plaintiff also adequately alleged claims against DOE nurse and deputies that received Mr. Brink's discharge paperwork and knew Mr. Brink required a 24-hour neurology referral, physical therapy, a wheelchair, and a wheelchair complaint cell.[1]  (FAC, ¶¶ 11, 45-46.)  Lastly, Plaintiff also specifically alleged that DOE deputies ignored Mr. Brink for 45 minutes, despite using the intercom to call for help after falling and slamming his head against the table. (FAC, ¶¶ 47-48.)  Rather than responding like a reasonable nurse or deputy, each defendant intentionally sat idle, thereby denying or delaying medical care.

Plaintiffs adequately alleged facts as to each DOE defendant that interacted with Mr. Brink.  Each defendant's identity can be easily discerned when the County produces relevant documents and responds to written discovery.

---

[1] "Despite these symptoms and Dr. Patel's recommendations, Dr. Obaisi never made an ENT referral, and there were significant delays in his neurology referrals. Both of these circumstances permit an inference of deliberate indifference." *Silva v. Mitchell*, 2021 U.S. Dist. LEXIS 188958, *47 (Il. N.D. 2021); "In the face of a known need for specialist treatment," even a "brief" delay may support deliberate indifference. *Thomas v. Martija*, 991 F.3d at 767, 769 (7th Cir. 2021).  Here, a referral was never made by DOE nurse.

## VI.

## <u>MR. BRINK'S BANE ACT CLAIMS ARE VIABLE</u>

The Bane Act provides a civil cause of action against anyone who "interferes by threat, intimidation, or coercion … with the exercise or enjoyment … of rights secured by the Constitution or laws of the United States, or of the rights secured by the Constitution or laws of this state." (§ 52.1, subd. (a); see id., subd. (b).) "The essence of a Bane Act claim is that the defendant, by the specified improper means (i.e., 'threats, intimidation or coercion'), tried to or did prevent the plaintiff from doing something he or she had the right to do under the law or to force the plaintiff to do something that he or she was not required to do under the law." *Austin B. v. Escondido Union School Dist*., 149 Cal.App.4th 860, 883 (2007).

An exception to section 815 immunity is section 815.2, which allows for vicarious liability of public entities based on the acts or omissions of employees. See Cal. Gov't Code § 815.2 ("A public entity is liable for injury proximately caused by an act or omission of an employee of the public entity within the scope of his employment if the act or omission would, apart from this section, have given rise to a cause of action against that employee or his personal representative.").  As such, federal courts have held that public entities can be sued for vicarious liability under California civil rights statutes.  *Gant v. County of L.A*., 772 F.3d 608, 623 (9th Cir. 2014) (explaining in its Bane Act analysis that "[u]nder California law, public entities are liable for actions of their employees within the scope of employment" to the extent their employees are liable); *Pierce v. Cnty. of Marin*, 291 F. Supp. 3d 982, 998 (N.D. Cal. 2018) (holding that public entities can be held vicariously liable under the Bane Act); *San Diego Branch of NAACP v. County of San Diego*, 2019 U.S. Dist. LEXIS 13375 at *12 (S.D. Cal. 2019) (quoting *D.V. v. City of Sunnyvale*, 65 F. Supp. 3d 782, 787 (N.D. Cal. 2014)) ("Courts have consistently held that public entities may be held vicariously liable . . . for police officers' violations of § 52.1 [the Bane Act].")); *Di-az v. Tesla, Inc*., 2019 U.S. Dist.

20

LEXIS 222543 at *14 (N.D. Cal. 2019) (citing the Bane Act and explaining that "[e]mployers can be vicariously liable for the actions of their employees under this section.")

In the Ninth Circuit, Bane Act claims relating to inadequate medical care in a correctional setting, controlling law states, with regard to coercive conduct, "at the pleading stage, the relevant distinction for purposes of the Bane Act is between intentional and unintentional conduct." *M.H. v. County of Alameda,* 90 F. Supp. 3d 889, 898 (N.D. Cal. 2013) Courts have equated the "[t]hreat, intimidation, or coercion" requirement to "intentional . . . conduct." *Id.* at 898. "Specific intent does not require a showing that a defendant knew he was acting unlawfully; [r]eckless disregard of the 'right at issue' is all that [i]s necessary." *Luttrell v. Hart,* 2020 U.S. Dist. LEXIS 173856, *15 (Cal. N.D. 2020).

First, based on the analysis above, Mr. Brink is alleging a vicarious claim against the County, not a direct claim. Second, Defendants argue that Plaintiffs failed to allege that Defendants acted with "specific intent," contending that the Bane act applies to "intentional conduct only." However, Mr. Brink adequately alleged in the FAC that DOE Defendants acted intentionally and "intentionally failed to provide medical treatment." (FAC, ¶¶ 29, 38, 56, 57, 59, 62, 73, 95.) Based on the analysis above, and the rationale pertaining to Mr. Brink's federal and state claims, Plaintiff can support a Bane Act violation against Defendants pursuant to the allegations set forth in the FAC.

## VII.

## THE COUNTY IS LIABLE FOR NEGLIGENCE PURSUANT TO STATUTE

The County argues it and its employees are immune, but also admits that Section 845.6 carves out an exception to their immunity. The County further argues that the exception under Section 845.6 does not apply under the alleged facts. Section 845.6 provides that a public employee, and the public entity where the employee is acting within the scope of his employment, is liable if the employee

21

knows or has reason to know that the prisoner is in need of immediate medical care and he fails to take reasonable action to summon such medical care." The section limits the duty to provide medical care for prisoners to cases where there is actual or constructive knowledge that the prisoner is in need of immediate medical care. To state a claim under section 845.6, plaintiffs must establish that: "(1) the public employee knew or had reason to know of the need (2) for immediate medical care, and (3) failed to reasonably summon such care." Cal. Gov't Code § 845.6; *M.B. v. Cal. Dep't of Corr. & Rehab.*, 2018 U.S. Dist. LEXIS 143821, *21 (Cal. E.D. 2018).

Here, the FAC alleges that each individual Defendant knew Mr. Brink was suffering from a serious medical condition (or was in need of necessary treatment or accommodations) yet each Defendant intentionally denied or delayed necessary medical care. Based on the analysis above, the County and its DOE employees are not immune from Mr. Brink's negligence claim.

## VIII.

## MR. BRINK'S ADA CLAIMS ARE VIABLE

"To plead a failure to accommodate under the ADA or the Rehabilitation Act, a plaintiff must allege that a public entity knew of the disability but failed to provide reasonable accommodations." See R*obertson v. Las Animas Cty. Sherriff's Dep't*, 500 F.3d 1185, 1196 (9th Cir. 2007). An entity's "deliberate refusal" to accommodate disability-related needs violates the ADA and the Rehabilitation Act. See *United States v. Georgia*, 546 U.S. 151, 157, 126 S. Ct. 877, 163 L. Ed. 2d 650 (2006) ("[T]he alleged deliberate refusal of prison officials to accommodate [plaintiff's] disability-related needs in such fundamentals as mobility, hygiene, medical care, and virtually all other prison programs constituted [an ADA violation]."). See *Estate of Silva v. City of San Diego*, 2020 U.S. Dist. LEXIS 221679 (S.D. Cal. 2020).

/ / /

22

Contrary to defendants' argument, "a state prison's failure to confine a wheelchair bound inmate in conditions that accommodate his wheelchair is cognizable under the ADA." *Sedore v. Landfair*, 2023 U.S. Dist. LEXIS 231744, *23-24 (Mich. E.D. 2023) (See 28 C.F.R. § 35.133(a) (requiring public entities to "maintain in operable working condition those features of facilities and equipment that are required to be readily accessible and usable by persons with disabilities" as provided for by the ADA or the regulations implementing the ADA); see also *Kutrip v. City of St. Louis*, 329 F. App'x 683 (8th Cir. 2009) (denying summary judgment where facts issue remained on ADA claim regarding jail officials' denial of disabled-accessible shower and shower chair to obviously disabled inmate).

In the FAC, Mr. Brink alleged he was denied a referral, physical therapy, and wheelchair accommodations *because* they thought Mr. Brink was lying or faking his disability. Such allegations mean Defendants failed to act reasonably because of Mr. Brink's disability. As such, Plaintiff has adequately alleged an ADA claim. (FAC, ¶¶ 7-75.)

## IX.

## <u>LEAVE TO AMEND</u>

If this Court is inclined to dismiss the FAC, in whole or in part, Mr. Brink requests leave to amend to add more facts to support his claims. Specifically, if the Court is not convinced that he has established deliberate indifference, Plaintiff can allege additional facts to show Defendants' state of mind when denying or delaying medical care. Mr. Brink can also offer additional allegations regarding Defendants' knowledge that failure to provide or summon the necessary medical care would present a substantial risk of harm to Mr. Brink, and that their failure to do so exacerbated Mr. Brink's injuries.

/ / /

/ / /

/ / /

## X.

## CONCLUSION

Plaintiff's claims are meritorious in form and substance.  As to the merit of the claims, *Sandoval* is controlling and supports the federal claims alleged against all Defendants.  For these reasons, the County's motion should be denied in its entirety.

Respectfully submitted,

**PHG Law Group**

Dated:  February 16, 2024

by:   s/ Danielle R. Pena
Danielle R. Pena, Esq.
dpena@PHGLawGroup.com
Attorneys for Plaintiff Jermey Brink

OPPOSITION TO MTD                    CASE NO. 23CV1756 DMS (SBC)