UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JEREMY BRINK,<br><br>                           Plaintiff,<br><br>v.<br><br>COUNTY OF SAN DIEGO; DOE SHERIFF'S DEPUTIES 1-5, Individually; DOE SHERIFF'S NURSES 6-10, Individually; and DOES 11-15, Individually, Inclusive<br><br>                           Defendants. | Case No.: 23cv1756 DMS (SBC)<br><br>**ORDER RE: DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT** |

     Pending before the Court is Defendant San Diego County's ("Defendant" or "the County") motion to dismiss, (ECF No. 7), Plaintiff Jeremy Brink's First Amended Complaint, (("FAC"), ECF No. 6), for failure to state a claim under Federal Rule of Civil Procedure Rule 12(b)(6). Plaintiff filed a response in opposition, (ECF No. 10), and Defendant filed a reply. (ECF No. 12.) For the reasons set forth below, the Court grants in part and denies in part Defendant's motion to dismiss.

## I.    BACKGROUND

     In July 2022, the San Diego County Sheriff's Department arrested Plaintiff for a felony warrant and parole violation and detained him at the Vista Detention Facility. Plaintiff alleges that, while detained, in early August he was exposed to Covid-19 and exhibited Covid related symptoms. (FAC ¶ 2.) Subsequently, on August 13, Plaintiff submitted a medical request form seeking testing and treatment for his Covid-19

symptoms. (*Id.*) The next day Plaintiff informed a Doe nurse ("Nurse One") that he had been exposed to Covid-19 and was exhibiting symptoms. (*Id.* ¶ 3.) She recorded Plaintiff's temperature as 102.1 degrees Fahrenheit, yet Nurse One did not test Plaintiff for Covid-19 or implement quarantine procedures. (*Id.* ¶¶ 3–4.) Over the next two days Plaintiff's Covid-19 symptoms worsened. (*Id.* ¶ 4.) And during those two days Plaintiff submitted two more medical request forms requesting treatment. (*Id.*) Both requests were ignored. (*Id.*)

Then, on August 18, 2022, Plaintiff was transported to court for a hearing. (*Id.* ¶ 5.) Later that day he was excused from court and taken to a court holding cell. (*Id.*) While in the holding cell he asked every deputy that came into the holding area for help, told several about his illness and symptoms, and asked several for medical intervention. (*Id.* ¶ 5–6.) But each deputy declined to act on his requests for help. (*Id.*) Eventually a deputy ("Deputy One") escorted Plaintiff back to his cell. (*Id.* ¶ 6.) Plaintiff told Deputy One that he felt faint, feverish, too weak to walk, and asked to go to medical first for treatment. (*Id.*) Yet, Deputy One denied Plaintiff's request. (*Id.*) Then, on the way to his cell, while walking upstairs, he fainted, fell to ground, and remained unconscious. (*Id.* ¶¶ 6–7.)

Plaintiff awoke in the hospital with little to no feeling below his waist. (*Id.* ¶ 8.) The hospital diagnosed him with Covid-19 and Guillain-Bare Syndrome ("GBS").[1] (*Id.* ¶ 9.) Plaintiff alleges that his GBS was a direct result from his untreated Covid-19 infection. (*Id.*) His fall, also caused by his GBS, herniated two disks in his back. (*Id.*) To treat his GBS he received intravenous immunoglobulin treatment for eight days. (*Id.* ¶ 9.) Upon discharge the hospital prescribed Plaintiff a wheelchair because he could not walk. (*Id.* ¶

---

[1] According to the Mayo Clinic, GBS is a "rare disorder in which your body's immune system attacks your nerves. Weakness and tingling in your hands and feet are usually the first symptoms." Guillain-Barre syndrome, Mayo Clinic, https://www.mayoclinic.org/diseases-conditions/guillain-barre-syndrome/diagnosis-treatment/drc-20363006 (last visited June 20, 2024). "As Guillain-Barre syndrome progresses, muscle weakness can turn into paralysis." *Id.* Other symptoms or complications can also occur. *See id.*; *see also* (FAC ¶¶ 9, 41) (citing the Mayo Clinic to provide information about GBS).

11.)  It also issued discharge instructions for Plaintiff's ongoing GBS treatment: a neurology consult within 24-hours and physical therapy.  (*Id.*)

When Plaintiff returned to jail, he did not receive the care that the hospital prescribed or an ADA compliant cell for his wheelchair.  (*Id.* ¶¶ 11–12.)  A Doe nurse ("Nurse Two") knew about the hospital's discharge order and Plaintiff's care information but did not ensure that Plaintiff received a neurology consult or physical therapy.  (*Id.* ¶ 11.)  And a classification deputy[2] ("Deputy Two") that knew of Plaintiff's medical condition did not house him in an ADA or a wheelchair compliant cell.  (*Id.* ¶ 12.)  Plaintiff alleges that the inadequate care prolonged and worsened his GBS symptoms.  (*Id.* ¶ 11.)

Then, on August 27, 2022, Plaintiff tried to move himself from his cell's toilet to his wheelchair.  (*Id.* ¶ 13.)  During the move he fell, hitting his head on a table and reinjuring his back.  (*Id.*)  Plaintiff alleges that he fell because his cell was not ADA compliant.  (*Id.*)  His cellmate and other inmates called for help, (*id.* ¶¶ 13–14), and after 45-minutes deputies responded and transferred Plaintiff to the hospital.  (*Id.* ¶ 14.)  Due to the fall Plaintiff lost a tooth, fractured a vertebra, and suffered from a concussion.  (*Id.*)  Moreover, following these events he was paralyzed from the waist down for eight months, required a wheelchair for mobility, and had trouble using his legs.  (*Id.* ¶¶ 15–16.)

In September 2023 Plaintiff sued the County of San Diego and 15 Doe Defendants (collectively "Defendants").  (ECF No. 1.)  Following a status conference, (ECF No. 5), Plaintiff filed his FAC on January 4, 2024.  (ECF No. 6.)  The FAC alleges five causes of action under:

    1)    42 U.S.C. § 1983 for violation of the Fourteenth Amendment against Doe Sheriff's Deputies 1-5 and Doe Sheriff's Nurses 6-10.  (FAC ¶¶ 27–52.)

---

[2] Per the complaint a classification deputy is responsible for classifying and housing all inmates, especially those requiring medical accommodations, and is trained to house inmates with wheelchairs in ADA compliant cells. (ECF No. 6 ¶ 12.)

    2) California Government Code Section 52.1 (also known as the Bane Act), against Doe Sheriff's Deputies 1-5, Doe Sheriff's Nurses 6-10, and San Diego County. (*Id.* ¶¶ 53–64.)

    3) The Americans with Disabilities Act ("ADA"), against all Doe Defendants. (*Id.* ¶¶65–78.)

    4) Common law negligence and California Government Code §§ 815.2 and 845.6, against all Doe Defendants and San Deigo County. (*Id.* ¶¶ 79–86.)

    5) The Rehabilitation Act ("RA"), against all Doe Defendants. (*Id.* ¶¶87–100.)

Defendants then filed a motion to dismiss, arguing that the FAC fails to state a claim upon which relief can be granted. (ECF No. 7.) Plaintiff responded in opposition, (ECF No. 10), and Defendants replied, (ECF No. 12.) This Court vacated oral argument and took the matter under submission on February 26, 2024. (ECF No. 13.)

## II.  LEGAL STANDARD

### A.  Federal Rule of Civil Procedure 12(b)(6).

A party may file a motion to dismiss on the grounds that a complaint "fail[s] to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. "Factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. If Plaintiff "ha[s] not nudged" her "claims across the line from conceivable to plausible," then the complaint "must be dismissed." *Id.* at 570.

In reviewing the plausibility of a complaint on a motion to dismiss, a court must "accept factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). But courts are not "required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Secs. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008) (quoting *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001)).

When a court grants a motion to dismiss a complaint, it must then decide whether to grant leave to amend. Leave to amend should be "freely given" where there is no (1) "undue delay," (2) "bad faith or dilatory motive," (3) "undue prejudice to the opposing party" if amendment were allowed, or (4) "futility" in allowing amendment. *Foman v. Davis*, 371 U.S. 178, 182 (1962). Dismissal without leave to amend is proper only if it is clear that "the complaint could not be saved by any amendment." *Intri-Plex Techs. v. Crest Grp, Inc.*, 499 F.3d 1048, 1056 (9th Cir. 2007).

**B.      Pleading Standard for "Doe" Defendants.**

"[W]hen a plaintiff has claims against an unknown defendant, the plaintiff must still meet federal pleading standards when alleging facts against such defendants" in federal court. *Lomeli v. Cty. of San Diego*, 637 F. Supp. 3d 1046, 1058 (S.D. Cal. 2022). A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Plaintiffs "may refer to unknown defendants as 'Does'" at the pleading stage but Rule 8 nevertheless requires a plaintiff to "'allege specific facts showing how each particular doe defendant violated'" the plaintiff's rights. *Thomas ex rel. Thomas v. Cty. of San Diego*, No. 20-cv-1979-CAB, 2021 WL 2715086, at *3 (S.D. Cal. July 1, 2021) (quoting *Keavney v. Cty. of San Diego*, No. 19-cv-1947-AJB, 2020 WL 4192286, at *4 (S.D. Cal. July 21, 2020)); *see Leer v. Murphy*, 844 F.2d 628, 634 (9th Cir. 1988) (plaintiff "must set forth specific facts as to each individual defendant's" wrongdoing). A district court should dismiss claims against Doe defendants in a Section 1983 suit when the complaint does not "even minimally explain how any of

the unidentified parties . . . personally caused a violation of [the claimant's] constitutional rights." *Estate of Serna v. Cty. of San Diego*, No. 20-cv-2096-LAB, 2022 WL 827123, at *3 (S.D. Cal. Mar. 18, 2022).

### III.   DISCUSSION

Defendants raise several arguments that the FAC should be dismissed. For the reasons explained below, the Court holds that: (A) the FAC states a Section 1983 claim against Nurse One, Nurse Two, Deputy One, and Deputy Two; (B) the Doe Defendants are not entitled to qualified immunity; (C) the FAC states a Bane Act claim against the County and some of the Doe Defendants; (D) the FAC does not state claims under the ADA or RA; (E) the FAC states a negligence claim against Defendants; and (F) the FAC fails to allege any claims against Doe Defendants 11–15.

**A.   Count 1: Section 1983 Individual Capacity Claims.**

Plaintiff sued the Doe Defendants under Section 1983 and the Fourteenth Amendment. He alleges that, while he was a pretrial detainee in county custody, Defendants violated his Fourteenth Amendment right to adequate medical care. (FAC ¶¶ 21, 28.) "Individuals in state custody have a constitutional right to adequate medical treatment." *Sandoval v. Cty. of San Diego*, 985 F.3d 657, 667 (9th Cir. 2021) (citing *Estelle v. Gamble*, 429 U.S. 97, 104–05 (1976)). And for pretrial detainees, this right arises under the Due Process Clause of the Fourteenth Amendment. *Id.* (citing *Bell v. Wolfish*, 441 U.S. 520, 535–36 (1979)). When a pretrial detainee alleges that they received deficient medical care under the Fourteenth Amendment the Ninth Circuit applies an "objective deliberate indifference" standard. *Gordon v. County of Orange* (*Gordon I*), 888 F.3d 1118, 1124–25 (9th Cir. 2018). Under this standard, pretrial detainees alleging that jail officials failed to provide constitutionally adequate medical care must show:

(1) The defendant made an intentional decision with respect to the conditions under which the plaintiff was confined [including a decision with respect to medical treatment];

(2) Those conditions put the plaintiff at substantial risk of suffering serious harm;

    (3) The defendant did not take reasonable available measures to abate that risk, even though a reasonable official in the circumstances would have appreciated the high degree of risk involved—making the consequences of the defendant's conduct obvious; and

    (4) By not taking such measures, the defendant caused the plaintiff's injuries.

*Sandoval*, 985 F.3d at 669 (quoting *Gordon I*, 888 F.3d at 1125) (alteration in original). "To satisfy the third element, the plaintiff must show that the defendant's actions were 'objectively unreasonable,' which requires a showing of 'more than negligence but less than subjective intent—something akin to reckless disregard.'" *Id.* (quoting *Gordon I*, 888 F.3d at 1125). For the reasons explained, the Court finds that the FAC states a claim against Nurse One, Nurse Two, Deputy One, and Deputy Two.

    **Nurse One and Nurse Two**. The FAC alleges that Nurse One knew Plaintiff had Covid symptoms and did not treat him according to protocol, creating a substantial risk of injury. (FAC ¶¶ 31–34.) Moreover, Plaintiff's symptoms worsened over the next few days because of Nurse one's decision, causing further injuries. (*Id.* ¶¶ 35–36.) Taken together, the FAC satisfies the *Gordon* standard as to Nurse One: it plausibly alleges that Nurse One intentionally decided not to provide medical care to Plaintiff, (*id.* ¶¶ 2–4, 35), that Nurse One's intentional decision placed Plaintiff at substantial risk of further harm, (*id.* ¶¶ 32–33), that Nurse One did not take action to abate that risk even though there were reasonable available measures to abate that risk, (*id.* ¶ 35), and that Nurse One's failure to provide treatment caused Plaintiff further injuries, (*id.* ¶¶ 36, 41–43).

    Similarly, the FAC alleges that following Plaintiff's first fall Nurse Two knew about his Covid-19; but did not treat Plaintiff according to protocol. (*Id.* ¶¶ 31–32.) Nurse Two also knew of the hospital's discharge instructions for physical therapy and a neurology consult. (*Id.* ¶ 11.) Yet Nurse Two did not ensure Plaintiff received such care. (*Id.* ¶¶ 11–12, 45–46.) The FAC alleges that Nurse Two failed to house Plaintiff in a wheelchair compliant cell, (*id.* ¶ 46), and that Nurse Two's failure to provide adequate treatment

exacerbated Plaintiff's injuries.  (*Id.* ¶ 45–47.)   Like the allegations against Nurse One, these allegations against Nurse Two satisfy the *Gordon* standard.

Additionally, the allegations against Nurse One and Nurse Two are like other cases that have survived pleading challenges.  *See Est. of Schuck v. Cty. of San Diego*, No. 23-CV-785-DMS-AHG, 2024 WL 500711, at *6 (S.D. Cal. Feb. 8, 2024) (plaintiff plausibly alleged that medical provider provided inadequate medical care when he ignored plaintiff's deteriorating health) ("*Schuck*"); *Greer v. Cty. of San Diego*, No. 3:19-CV-0378-GPC-AGS, 2021 WL 615046, at *5 (S.D. Cal. Feb. 17, 2021) (reasonable jury could conclude that the nurse provided inadequate medical care when she failed to follow seizure protocol and provide care for plaintiff with seizure disorder).  Thus, the FAC's allegations against Nurse One and Nurse Two are plausible at this stage.

**Deputy One**.  The FAC alleges that Deputy One knew Plaintiff was feeling faint and feverish, and that Deputy One escorted Plaintiff to the housing unit rather than medical—intentionally denying him medical treatment.  (*Id.* ¶ 6.)  The FAC also alleges that the decision to deny him medical treatment further caused Plaintiff's GBS and fall.  (*Id.* ¶ 43.)  Altogether, the FAC satisfies the *Gordon* standard with respect to Deputy One: He made an intentional decision by exhibiting "deliberate indifference to his serious medical need."  *Greer*, 2021 WL 615046, at *5.  And the decision not to refer Plaintiff for further medical care put him at "'at substantial risk of suffering' the medical complications" which led to his subsequent injuries.  *Schuck*, 2024 WL 500711, at *7.  As a result, the allegations against Deputy One are plausible at this stage.

**Deputy Two**.  Likewise, the FAC alleges that Deputy Two knew of Plaintiff's condition and that he required a wheelchair but did not assign him to a wheelchair compliant cell.  (*Id.* ¶ 12.)  It further alleges that, as noted above, the failure to assign him a wheelchair compliant cell contributed to his second fall.  (*Id.* ¶¶ 46–47.)  These allegations satisfy the *Gordon* standard against Deputy Two.  *See Greer*, 2021 WL 615046, at *5 (plaintiff stated a claim against a deputy by failing to provide reasonable cell

1  accommodations to disabled inmate). Deputy Two's decision not to assign Plaintiff to an
2  ADA compliant cell satisfies the deliberate indifference standard.

3  **The remaining Doe Defendants**. However, the FAC does not state a Section 1983
4  claim against the other Doe Defendants. In federal court, a plaintiff must "'allege specific
5  facts showing how each particular doe defendant violated'" the plaintiff's rights. *Thomas
6  ex rel. Thomas*, 2021 WL 2715086, at *3 (quoting *Keavney v. Cty. of San Diego*, No. 19-
7  cv-1947-AJB, 2020 WL 4192286, at *4 (S.D. Cal. July 21, 2020)). The FAC does not
8  explain how the remaining Doe Defendants contributed to Plaintiff's injuries. Similarly,
9  the allegations against the remaining Doe deputies are too generalized to show how each
10 Doe violated Plaintiff's rights. Consequently, the FAC fails to state a Section 1983 claim
11 against the remaining Doe Defendants.

12 In sum, the Court grants in part and denies in part Defendants' motion to dismiss the
13 Section 1983 claim against Does 1–10. The Court dismisses, with leave to amend, all but
14 Nurse One, Nurse Two, Deputy One, and Deputy Two from the first count. *See Intri-Plex*,
15 499 F.3d at 1056 (dismissal without leave to amend is proper only when it is clear "the
16 complaint could not be saved by any amendment").

17    **B.    Qualified Immunity.**

18 Defendants assert they have qualified immunity, and so the Section 1983 claims
19 against them must be dismissed. At this stage of the proceedings, the Court declines to
20 find that Defendants have qualified immunity. Qualified immunity is an affirmative
21 defense that must be raised by a defendant. *O'Brien v. Welty*, 818 F.3d 920, 936 (9th Cir.
22 2016). It shields government officials from liability for civil damages, (*Sabra v. Maricopa
23 Cty. Cmty. Coll. Dist.*, 44 F.4th 867, 886 (9th Cir. 2022)), but only if the official is
24 performing discretionary functions and "their conduct does not violate clearly established
25 statutory or constitutional rights of which a reasonable person would have known." *Id.* To
26 determine whether a state official is entitled to qualified immunity, the Court must
27 consider: (1) "whether the evidence viewed in the light most favorable to the plaintiff is
28 sufficient to show a violation of a constitutional right"; and (2) "whether that right was

clearly established at the time of the violation." *Sandoval*, 985 F.3d at 671. Additionally, if a defendant asserts qualified immunity in a motion to dismiss then "dismissal is not appropriate unless [the court] can determine, based on the complaint itself, that qualified immunity applies." *O'Brien*, 818 F.3d at 936 (internal quotation marks omitted). Plaintiff fails to meet this burden.

As explained above, the FAC plausibly alleges that Nurse One, Nurse Two, Deputy One, and Deputy Two violated Plaintiff's Fourteenth Amendment Right to adequate medical care. And so, the Court must turn to the second qualified immunity prong—whether that right was "clearly established at the time of the violation." *Pauluk v. Savage*, 836 F.3d 1117, 1125 (9th Cir. 2016) (quoting *Espinosa v. City & Cty. of San Francisco*, 598 F.3d 528, 532 (9th Cir. 2010)). The unlawfulness of an officer's conduct is "clearly established," when, "at the time of the officer's conduct, the law was 'sufficiently clear that every reasonable official would understand that what he [wa]s doing' [wa]s unlawful." *District of Columbia v. Wesby*, 583 U.S. 48 (2018). "In other words, existing law must place the [un]constitutionality of the officer's conduct 'beyond debate.'" *Id*. If not, then the officers are entitled to qualified immunity. *See id.*

The Fourteenth Amendment right to medical care was clearly established at the time of the violation. In 2021, the Ninth Circuit held that "a prison official who is aware that an inmate is suffering from a serious acute medical condition violates the Constitution when he stands idly by rather than responding with reasonable diligence to treat the condition." *Sandoval*, 985 F.3d at 680; *see also id.* at 667 ("Individuals in state custody have a constitutional right to adequate medical treatment."). As alleged, Doe Defendants knew Plaintiff had Covid-19 and GBS but declined to provide treatment or other accommodations. For example, Nurse One knew Plaintiff had Covid-19 symptoms but did not initiate care or Covid protocols. (FAC ¶ 4.) Similarly, Deputy One knew that Plaintiff had Covid-19 and declined to treat his condition. (*Id.* ¶ 6–7.) Likewise, Nurse Two and Deputy Two allegedly knew Plaintiff was disabled from GBS yet declined to treat him or arrange for appropriate housing. (*Id.* ¶¶ 11–13.) Plaintiff plausibly alleges Defendants

stood by without reasonably responding to treat him from a known medical condition. Those allegations are sufficient to withstand Defendants' qualified immunity challenge at this stage of the proceedings.

Defendants argue that Plaintiff cannot satisfy the clearly established prong because he "must identify a case where an individual plaintiff presented with symptoms of COVID-19, and the individual's condition worsened due to jail staff's failure to do some unspecified act." (ECF No. 7-1 at 16.) In addition, Defendants argue *Sandoval* does not govern because "'clearly established law' must be 'particularized' to the facts of the case rather than 'defined at a high level of generality.'" (ECF No. 12 at 4) (citing *White v. Pauly*, 137 S. Ct. 548, 552 (2017)). But those arguments are unpersuasive. The Supreme Court does not require "a case directly on point for a right to be clearly established." *White*, 580 U.S. at 79 (cleaned up). Moreover, general statements are capable "of giving fair and clear warning to officers." *White*, 137 S. Ct. at 552 (internal quotations omitted); *see also Polanco v. Diaz*, 76 F.4th 918, 931 (9th Cir. 2023) ("COVID-19 may have been unprecedented, but the legal theory that Plaintiffs assert is not."). It is true that *Sandoval* does not expressly address the facts presented here. However, *Sandoval*'s general holding places the constitutional issue beyond debate: when a prison official knows a prisoner is suffering from a serious acute medical condition, the official must treat the condition with reasonable diligence. *Sandoval*, 985 F.3d at 680. That is what Plaintiff has alleged here. (FAC ¶¶ 27–52.) As a result, Nurse One, Nurse Two, Deputy One, and Deputy Two do not have qualified immunity.

### C.   Count 2: The Bane Act.

The FAC alleges that Defendants are liable under California Civil Code section 52.1, codified as the Bane Act. Defendants make two arguments that the Bane Act claims should be dismissed: First, that the FAC does not claim the Doe Defendants acted with specific intent, an element of Bane Act liability; second, that the County cannot be sued, or is immune, under the Bane Act. For the reasons below, the Court does not agree with Defendants' arguments.

### 1.     The Bane Act claims against the Doe Defendants.

"The essence of a Bane Act claim is that the defendant, by the specified improper means (i.e., 'threats, intimidation or coercion'), tried to or did prevent the plaintiff from doing something he or she had the right to do under the law . . . ." *Cornell v. City and County of San Francisco*, 17 Cal. App. 5th 766, 791 (2017) (quoting Cal. Civ. Code § 52.1). Violations of federal constitutional and statutory rights are all cognizable under the Bane Act. *See* Cal. Civ. Code § 52.1(b). "The elements of a Bane Act claim are essentially identical to the elements of a § 1983 claim, with the added requirement that the government official had a "specific intent to violate" a constitutional right." *Hughes v. Rodriguez*, 31 F.4th 1211, 1224 (9th Cir. 2022). The Court has already determined that the FAC states a Section 1983 claim against Nurse One, Nurse Two, Deputy One, and Deputy Two. So, if they acted with specific intent, then the Bane Act Claim against them will survive.

To show specific intent, a plaintiff must satisfy two requirements. First, the right at issue must be "clearly delineated and plainly applicable under the circumstances of the case[.]" *Cornell*, 17 Cal. App. 5th at 803. Second, the defendant must have "commit[ted] the act in question with the particular purpose of depriving" the victim of his enjoyment of the interests protected by that right. *Id*. The specific intent requirement "is satisfied where the defendant . . . acted with '[r]eckless disregard of the right at issue.'" *Est. of Serna v. Cty. of San Diego*, No. 20CV2096-LAB-MSB, 2022 WL 827123, at *8 (S.D. Cal. Mar. 18, 2022) (alteration in original).

The FAC satisfies both inquiries. First, as explained above, the right to adequate medical care under the Fourteenth Amendment is clearly delineated and plainly applicable under the circumstances of this case. *See Sandoval*, 985 F.3d at 667, 680; *Gordon I*, 888 F.3d at 1125. Second, the FAC alleges that Nurse One, Nurse Two, Deputy One, and Deputy Two "acted with the specific intent of denying Plaintiff much needed medical care despite knowing he was in severe medical distress." (FAC ¶ 59). It further alleges facts to support that claim. (*Id*. ¶¶ 53, 56–58) (alleging that Nurse One knew Plaintiff had Covid symptoms and failed to treat him, that Nurse Two intentionally denied Plaintiff care for his

GBS symptoms, and that Deputy One and Deputy Two failed to summon medical care despite Plaintiff's obvious medical distress). As noted, under the Bane Act, "[r]eckless disregard of the 'right at issue' is all that [i]s necessary." *Cornell*, 17 Cal. App. 5th at 803. In the Section 1983 context, a claim under the objective deliberate indifference standard is akin to showing reckless disregard. *See Sandoval*, 985 F.3d at 669 ("[T]he plaintiff must show that the defendant's actions were objectively unreasonable, which requires a showing of . . . something akin to reckless disregard") (internal quotations omitted). Here, as set forth above, the Court has determined that the FAC alleges a claim under the objective deliberate indifference standard regarding Plaintiff's right to adequate medical care. (*See, e.g.*, FAC ¶¶ 27–52.) Thus, the FAC states a Bane Act claim against Nurse One, Nurse Two, Deputy One, and Deputy Two.[3]

## 2.  The FAC states a Bane Act claim against the County.

Defendants also argue that the Bane Act claims against the County must be dismissed for two reasons. First, Defendants argue that the County cannot be sued directly under the Bane Act. (ECF No. 7-1 at 17.) However, the Bane Act "allows for vicarious liability of public entities based on the acts or omissions of employees." *Astorga v. Cty. of San Diego*, No. 3:21-cv-00463, 2022 WL 1556164, at *3 (S.D. Cal. May 17, 2022); Cal. Gov't Code § 815.2 ("A public entity is liable for injury proximately caused by an act or omission of an employee of the public entity within the scope of his employment if the act or omission would, apart from this section, have given rise to a cause of action against that employee or his personal representative.") The FAC alleges that the County is vicariously liable under the Bane Act for the Doe Defendants' acts. (FAC ¶ 63.) The FAC cites section 815.2 of the California Government Code as the basis for vicarious liability. (*Id.* ¶ 82);

---

[3] For the reasons explained above, the FAC does not state a Section 1983 claim against the remaining Doe Defendants. Therefore, the FAC does not state a Bane Act claim against the remaining Doe Defendants.

*Astorga*, No. 3:21-cv-00463, 2022 WL 1556164, at *4.  As a result, reading the FAC in the light most favorable to Plaintiff, Defendants' first argument opposing the Bane Act claim against the County fails.

Second, Defendants argue that the County is "immune from the Bane Act Claim under California Government Code Section 844.6." (ECF No. 7-1 at 17.)  It is true that under Section 844.6 "[a] *public entity* is not liable for an injury to any prisoner." Cal. Gov't Code § 844.6(a)(2) (emphasis added).  Yet, the analysis does not end there.  Section 844.6 further provides that "[n]othing in this section exonerates a *public employee* from liability for injury proximately caused by his negligent or wrongful act or omission." *Id.* § 844.6(d) (emphasis added).  And Section 845.6 further modifies that provision, stating that "[n]either a public entity nor a public employee is liable for injury proximately caused by the failure of the employee to furnish or obtain medical care for a prisoner in his custody." *Id.* § 845.6.  However, Section 845.6 has another exception: "*the public entity* where the employee is acting within the scope of his employment, *is liable* if the employee knows or has reason to know that the prisoner is in need of immediate medical care and he fails to take reasonable action to summon such medical care." *Id.* (emphasis added).  This statutory rabbit hole can be summarized as follows:

> (1) public entities cannot be held liable for wrongfully or negligently injuring prisoners but public employees can be; unless (2) the prisoner's injury resulted from a failure to furnish medical care (in which case, neither the public employee or public entity are liable); except (3) when the public employee knew or had reason to know that the injured prisoner was in need of immediate medical care and failed to take reasonable action to summon such medical care (in which case, both the public employee and the public entity are liable).

*Bousman v. Cty. of San Diego*, No. 3:23-CV-1648-W-JLB, 2024 WL 1496220, at *11 (S.D. Cal. Apr. 5, 2024) (internal footnotes and citations omitted).

Here, Section 844.6 does not require that the Bane Act claim against the County be dismissed.  Reading the FAC in the light most favorable to Plaintiff, the FAC alleges that

Nurse One failed to summon immediate medical care for Plaintiff's Covid-19. (FAC ¶ 56.) Likewise, Nurse Two failed to summon immediate medical care to mitigate Plaintiff's ongoing GBS symptoms. (*Id.* ¶ 57.) And Deputies One and Two failed to summon medical care despite Plaintiff's obvious symptoms. (*Id.* ¶ 58.) As a result, "the County is not immune from the Bane Act insofar as it would be vicariously liable for Does' alleged failure to reasonably summon immediate medical care under California Government Code section 845.6." *Bousman*, 2024 WL 1496220, at *12.

In sum, the Court grants in part and denies in part Defendants' motion with respect to the Bane Act Claims. The Bane Act claims against Nurse One, Nurse Two, Deputy One, and Deputy Two survive. In addition, the Bane Act claim that the County is vicariously liable for those Doe Defendants survives under the theory that they knew Plaintiff needed immediate medical care and failed to take reasonable action to summon such medical care. However, the remaining Bane Act claims are dismissed without prejudice.

**D.   Counts 3 and 5: The ADA and Rehabilitation Act.**

Plaintiff alleges causes of actions under the ADA and RA for failure to provide reasonable accommodations. Defendants argue that the FAC does not state a claim because it does not allege Plaintiff was treated differently because of his disability. For the reasons below, the ADA and RA Claims should be dismissed without prejudice for failure to state a claim for which relief can be granted. To state a claim under Title II of the ADA, the plaintiff must allege:

> (1) he is an individual with a disability; (2) he is otherwise qualified to participate in or receive the benefit of some public entity's services, programs, or activities; (3) he was either excluded from participation in or denied the benefits of the public entity's services, programs, or activities, or was otherwise discriminated against by the public entity; and (4) such exclusion, denial of benefits, or discrimination was by reason of [his] disability.

*Simmons v. Navajo Cty., Ariz.*, 609 F.3d 1011, 1022 (9th Cir. 2010) (the ADA is not violated by prison's failure to attend to medical needs of disabled prisoners) *rev'd on other grounds*, *Castro v. Cty. of Los Angeles*, 833 F.3d 1060 (9th Cir. 2016) (en banc). Similarly,

to state an RA claim, a plaintiff must allege: "(1) he is an individual with a disability; (2) he is otherwise qualified to receive the benefit; (3) he was denied the benefits of the program solely by reason of his disability; and (4) the program receives federal financial assistance." *O'Guinn v. Lovelock Correctional Center*, 502 F.3d 1056, 1060 (9th Cir. 2007). "There is no significant difference in analysis of the rights and obligations created by the ADA and the Rehabilitation Act." *Zukle v. Regents of Univ. of Calif.*, 166 F.3d 1041, 1045 and n.11 (9th Cir. 1999).

Here, the FAC does not state an ADA or RA claim because it does not allege that Plaintiff was discriminated against because of his disability. *See Pierce v. Cty. of Orange*, 526 F.3d 1190, 1214 (9th Cir. 2008). While the FAC has other allegations regarding Plaintiff's ADA and RA claims, it does not plead sufficient facts to satisfy all required elements. Specifically, it lacks the critical allegation that Plaintiff was discriminated against by reason of his disability. Indeed, the FAC does allege that the Doe Nurses and Doe Deputies denied him physical therapy and rendered inadequate treatment. (FAC ¶¶ 69–71.) However, "the ADA prohibits discrimination because of disability, not inadequate treatment for disability." *Simmons*, 609 F.3d at 1022. At this stage, the FAC's ADA and RA claims only amount to a claim that Plaintiff received inadequate treatment for a disability. While Plaintiff may have needed an ADA compliant cell, the failure to provide him with one does not mean he was discriminated against. Thus, the Court dismisses Plaintiff's ADA and RA claims as to all Doe Defendants without prejudice.[4]

---

[4] The ADA and RA claims also appear defective for another reason: Neither Title II of the ADA nor Section 504 of the RA authorizes claims against state officials in their individual capacities. *See Vinson v. Thomas*, 288 F.3d 1145, 1156 (9th Cir. 2002) (holding that "a plaintiff cannot bring an action under 42 U.S.C. § 1983 against a State official in her individual capacity to vindicate rights created by Title II of the ADA or section 504 of the Rehabilitation Act"). Plaintiff brought his ADA and RA claims against all Doe Defendants individually. However, neither party raised this issue, so the Court does not dismiss the ADA or RA claims for these grounds.

### E. Count 4: Negligence.

The FAC alleges that the Doe Defendants and the County are liable for negligence under a failure to summon care theory. (FAC ¶¶ 79–86.) As to the Doe Defendants, the FAC alleges that they are liable for failing to summon medical care and provide proper housing accommodations. (FAC ¶ 81.) And as to the County, the FAC alleges that it is liable under California Government Code §§ 815.2 and 845.6 for the acts of its employees. (*Id.* ¶¶ 82–83.) Defendants argue that they are immune from Plaintiff's negligence claim under three laws: (1) the California Government Tort Claims Act, California Government Code §§ 810 et. seq.; (2) California Government Code § 844.6(a)(2); and (3) California Government Code §§ 856.4, 855.4, and 855.6. Explained below, Defendants' arguments for immunity lack merit.

First, Defendants argue that the County is immune under California Government Code § 815. (ECF No. 7-1 at 20.) Section 815 provides that a public entity is not liable for injury "[e]xcept as otherwise provided by statute." Cal. Gov't Code § 815 (preamble). The next section states that "a public entity is liable for injury proximately caused by an act or omission of an employee of the public entity within the scope of his employment." Cal. Gov't Code § 815.2(a). Indeed, the FAC alleges that the County is liable for the misconduct of its employees under Section 815.2(a). (FAC ¶ 82). Simply, the County is not immune under § 815 because another statute provides for liability. *Feldman v. Sutton*, No. 22-cv-341, 2022 WL 3019936, at *9 (S.D. Cal. July 29, 2022) ("while CGC § 815 provides that public entities are not generally liable for injuries caused by their employees unless otherwise provided by statute, see Cal. Gov. Code § 815, § 815.2 provides the statutory vehicle for such municipal liability"). Thus, the Court rejects Defendants' § 815 argument.

Second, Defendants argue that the County is immune under California Government Code § 844.6(a)(2). (ECF No. 7-1 at 20.) The same argument failed under the Bane Act claim, and the same reasoning applies here. Accordingly, the negligence claims can "proceed against the County, insofar as it would be vicariously liable for [the Doe

Defendants'] alleged failure to reasonably summon immediate medical care under California Government Code section 845.6." *Bousman*, 2024 WL 1496220, at *12.

Third, Defendants argue that the County and Doe Defendants are immune under California Government Code sections 856.4, 855.4, and 855.6. (ECF No. 7-1 at 21.) Defendants have failed to carry their burden for this argument. Under Fed. R. Civ. P. 7(b)(1)(B) a movant must "state with particularity the grounds for seeking" a court order. *See also Levi Strauss & Co. v. Connolly*, 2023 WL 2347433, at *8 (N.D. Cal. Mar. 2, 2023) ("[Defendant] has not identified any pleading deficiency in [plaintiffs] claims and therefore has not met his burden to show that no claim has been stated."); *Carlson v. Colorado Ctr. for Reproductive Med., LLC*, 2021 WL 5494273, at *3 (N.D. Cal. Nov. 23, 2021) (finding that defendants' conclusory arguments that plaintiffs' allegations did "not amount to any viable cause of action" were insufficient to satisfy their burden to show that no claim had been stated). Here, Defendants have dedicated two sentences to their final immunity argument: one in their opening brief, (ECF No. 7-1 at 21), and one in their reply, (ECF No. 12 at 5). They cite statutes that may be relevant, but do not elaborate on how those statutes apply to the FAC. In other words, Defendants advance a conclusory claim that they are immune. Other courts have rejected unsupported arguments. *See Al-Tamimi v. Adelson*, 916 F.3d 1, 6 (D.C. Cir. 2019) ("[m]entioning an argument 'in the most skeletal way, leaving the court to do counsel's work, create the ossature for the argument, and put flesh on its bones' is tantamount to failing to raise it."). And so have courts in this district. *Rhodes v. Robinson*, 399 F. App'x 160, 164 (9th Cir. 2010) ("The district court also correctly disregarded Rhodes' motion for cross-summary judgment because it did not 'state with particularity the grounds for seeking the order' as required by Federal Rule of Civil Procedure 7(b)(1)(B)."); *Bousman*, 2024 WL 1496220, at *7 (movant did not meet its burden when it did not state with particularity the grounds for their motion); *Dias v. Burberry Ltd.*, No. 21-cv-192, 2021 WL 2349730, at *10 (S.D. Cal. June 9, 2021) ("A mere request for fees and costs in the table of contents without any argument is insufficient.").

As a result, the Court declines to find that Defendants have carried their burden for their final immunity argument.[5]

### F. The FAC fails to allege any claims against Doe Defendants 11–15.

Finally, the FAC, in its pleading caption, references Doe Defendants 11–15. Upon review, the FAC contains no allegations or other references to those Doe Defendants. In fact, Section III of the FAC, entitled "The Parties", describes Does 1–5 and 6–10. (FAC ¶¶ 24–26.) However, neither that section nor any other part of the FAC mentions Does 11–15. Because there are no allegations against them, the Court dismisses any claims against Does 11–15 without prejudice.

---

[5] The Court's decision on this issue does not impact the doctrine of sovereign immunity because the provisions that Defendants cite are defenses to liability, not immunities from suit. *Hampton v. California*, 83 F.4th 754, 772 (9th Cir. 2023) *petition for cert. filed sub. nom.*, *Diaz et al., v. Polanco et al.*, Dkt. No. 23-722 (distributed for conference). Moreover, the provisions that Defendants cite do not provide them with immunity from Plaintiff's negligence claim. Plaintiff alleges that Defendants are negligent under a failure to summon care theory. However, the statutes that Defendants cite provide immunity for other types of acts. *See* Cal. Gov't Code §§ 855.4 (failure to prevent disease), 855.6 (failure to make physical examination); 856.4 (failure to admit to medical facility). Thus, Defendants' final immunity argument does not address Plaintiff's theory of negligence.

## IV.   CONCLUSION AND ORDER

For the reasons explained above the Court **GRANTS IN PART** and **DENIES IN PART** Defendants' motion to dismiss the FAC.  The Court **ORDERS** as follows:

(1) **Count 1**: The Court **DENIES** the motion to dismiss Nurse One, Nurse Two, Deputy One, and Deputy Two from the Section 1983 individual capacity claims and **GRANTS** the motion to dismiss as to all other Doe Defendants.

(2) **Count 2**: The Court **DENIES** the motion to dismiss the County, Nurse One, Nurse Two, Deputy One, and Deputy Two from the Bane Act claims, and **GRANTS** the motion to dismiss as to all other Doe Defendants.

(3) **Count 3**: The Court **GRANTS** the motion to dismiss all Defendants from the ADA claims.

(4) **Count 4**: The Count **DENIES** the motion to dismiss all Defendants from the negligence claims.

(5) **Count 5**: The Court **GRANTS** the motion to dismiss all Defendants from the RA claims.

Within 14-days of the date of this Order, the Plaintiff may file a second amended complaint which cures the pleading deficiencies identified in this Order.

**IT IS SO ORDERED**.

Dated:  July 3, 2024

_____
Hon. Dana M. Sabraw, Chief Judge
United States District Court