# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JEREMY BRINK<br><br>                                    Plaintiff,<br><br>v.<br><br>COUNTY OF SAN DIEGO; MICHAEL ALBRECHT; MARCOS ANDRADE; EMMYLOU ARROYO; JEREMY BANKS; DAVID GIBSON; REGINALD MORALDE; DEPUTY MORRISSEY; KEVIN O'NEIL; JOHN STUBBLEFIELD; BRITTANY STUBBS; KRISTIN HYNDMAN; DOE SHERIFF'S DEPUTIES 1-5, Individually; DOE SHERIFF'S NURSES 6-10, Individually; AND DOES 11-15, Individually, Inclusive,<br><br>                                    Defendants. | Case No.:  23cv1756 DMS (SBC)<br><br>**ORDER DENYING DEFENDANT'S MOTION TO DISMISS** |

Pending before the Court is Defendant San Diego County's Motion to Dismiss Plaintiff's *Monell* claim from Plaintiff's Fourth Amended Complaint.  Plaintiff filed a response in opposition, (ECF No. 87), and the County did not file a reply.  For the reasons set forth below, the Court denies the motion.

/ / /

1

## I.      BACKGROUND

Plaintiff sustained multiple injuries while in San Diego County's custody and filed this suit as a result.  The background is set forth in detail in the Court's previous Orders dated July 3, 2024, *Brink v. County of San Diego*, No. 23cv1756 DMS (SBC), 2024 LEXIS 118503 (S.D. Cal. July 3, 2024), and December 6, 2024, *Brink v. County of San Diego*, No. 23cv1756 DMS (SBC), 2024 U.S. Dist. LEXIS 221413 (S.D. Cal. Dec. 6, 2024).

As set out therein, the County took custody of Plaintiff at the Vista Detention Facility in July 2022.  Soon after, an inmate in a nearby cell tested positive for Covid-19, and Plaintiff began feeling Covid-19 related symptoms. (Fourth Amended Complaint ("4AC") ¶¶ 1–2.)  On August 13, Plaintiff submitted a medical request form. (*Id.* ¶ 2.)  Three days later, a nurse met with Plaintiff in his cell in response. (*Id.* ¶ 3.)  Plaintiff told the nurse about his symptoms and exposure, and the nurse recorded Plaintiff's temperature at 102.1. (*Id.* ¶ 4.)  The nurse then told Plaintiff, "Ok, you're good," and did not implement a Covid-19 test or quarantine protocols.  (*Id.*)  Plaintiff's symptoms worsened over the next two days, and he submitted two more medical request forms. (*Id.*)  Both were ignored. (*Id.*)

A couple days later, Plaintiff went to court for a hearing but was excused and moved to a holding cell. (*Id.* ¶ 5.)  Once there, Plaintiff informed at least seven court deputies that he was excused from court due to his medical condition and requested treatment. (*Id.*)  He was ignored, and Plaintiff was taken back to his housing unit without receiving medical treatment. (*Id.* ¶ 6.)  Before a deputy escorted Plaintiff to his cell, Plaintiff told the deputy he was feeling faint, feverish, and too weak to walk and asked to go to medical before his cell. (*Id.* ¶ 6.)  His request was denied, and as Plaintiff walked up the housing module's stairs, he fainted and fell, herniating two discs and losing consciousness. (*Id.* ¶¶ 7–8, 10.)

Plaintiff woke in the hospital with little to no feeling below his waist. (*Id.* ¶ 8.)  The hospital diagnosed Plaintiff with Covid-19 and Guillain-Barré Syndrome ("GBS"), a rare immune disorder that causes the immune system to attack the nerves, often inducing temporary paralysis. (*Id.* ¶ 9.)  Plaintiff alleges his untreated Covid-19 caused his GBS,

and according to the hospital, Plaintiff's GBS caused both his initial fall and partial paralysis. (*Id.* ¶ 9–10.)

At discharge, Plaintiff could not walk unassisted. (*Id.* ¶ 11.)  The hospital issued discharge instructions, including a wheelchair prescription, a neurological evaluation, and physical therapy. (*Id.*)  Plaintiff alleges he did not receive the neurological evaluation or physical therapy at any point during his detention. (*Id.* ¶ 11, 14.)  Plaintiff returned to prison in a wheelchair but did not receive an ADA-compliant cell. (*Id* ¶ 12.)

Thereafter, while attempting to use the bathroom in his cell, Plaintiff slipped from his wheelchair and slammed against a table, causing a fractured vertebra, a concussion, and a lost tooth. (*Id.* ¶¶ 13, 14.)  Plaintiff's cellmate pushed the emergency call button and yelled for help. (*Id.* ¶ 13.)  Staff responded forty-five minutes later, taking Plaintiff to the hospital. (*Id.* ¶ 14.)  When Plaintiff returned from the hospital, he was again housed in a non-ADA-compliant cell. (*Id.*)

A year later, Plaintiff sued the County and 15 Doe Defendants. (ECF No. 1.) Following two motions to dismiss, Counts 1–5 of Plaintiff's suit survived dismissal. (ECF No. 16, 25.)

The 4AC adds a *Monell* claim against the County of San Diego. (4AC ¶ 117.)  This claim alleges the County's grievance and medical request policies and the County's de facto practices and customs violated Plaintiff's Fourteenth Amendment right to adequate medical care. (*Id.* ¶ 118.)  Specifically, Plaintiff alleges there are no safeguards to ensure grievance or medical request forms are available to inmates or that they are processed in the Jail Information System Management System (JIMS) when submitted. (*Id.* ¶ 120.) Plaintiff alleges forms are supposed to be available in the day room of every module and collected by correctional deputies, potentially the same deputies whom the grievance forms are about. (*Id.*)  Plaintiff further alleges that, based on County policy, there is no way to track whether a form was processed and no database that stores the form's information. (*Id.*)  Plaintiff also claims the County has a policy, custom, or practice of failing to adequately train employees to handle grievances. (*Id.* ¶¶ 125, 137.)

23cv1756 DMS (SBC)

In addition, Plaintiff asserts there is no disability specific request or grievance system. (*Id.* ¶ 123.)  Instead, disabled inmates must use the general grievance system when requesting disability accommodations or complaining about disability discrimination. (*Id.* ¶ 124.)  Plaintiff alleges this is an ineffective system that fails to provide disabled people with adequate notice of how to request reasonable accommodations. (*Id.* ¶ 123.)

According to Plaintiff, these systemic failures affected him in two ways.  First, Plaintiff claims the County's policies, customs, and lack of training caused the forms he submitted after his fruitless meeting with the nurse to be ignored. (*Id.* ¶ 137.)  Plaintiff alleges that had the County responded to his forms, he would have been placed in a medical housing unit before his first fall. (*Id.*)

Second, Plaintiff claims he submitted multiple ignored grievance forms requesting a wheelchair compliant cell and physical therapy after his first return from hospitalization. (*Id.* ¶ 122.)  And according to the 4AC, Plaintiff's second fall occurred because the cell was not wheelchair compliant (*Id.* ¶ 13.)

To support the notion that the grievance system was a failure in both policy and training, Plaintiff cites seven incidents since 2017 where inmates' grievance forms were ignored, unavailable, discarded, or discouraged. (*Id.* ¶ 128–34.)  These include deputies throwing grievances in the trash, deputies warning inmates not to submit grievances, and the County admitting they failed to process an inmate's grievance after the inmate supplied proof he had. (*Id.* ¶¶ 128, 130, 133.)

## II.      LEGAL STANDARD

A party may file a motion to dismiss on the grounds that a complaint "fail[s] to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6).  To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

4

23cv1756 DMS (SBC)

"Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. "Factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. If a plaintiff "ha[s] not nudged" his "claims across the line from conceivable to plausible," then the complaint "must be dismissed." *Id.* at 570.

In reviewing a complaint's plausibility on a motion to dismiss, a court must "accept factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). But courts are not "required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Secs. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008) (quoting *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001)).

### III.   DISCUSSION

The County argues Plaintiff's *Monell* claim should be dismissed for two reasons: the *Monell* claim is time-barred, and Plaintiff pleads insufficient facts to support the claim's elements. Plaintiff responds his *Monell* claim relates back to his previous complaints and is therefore not time-barred. He also argues he pleaded sufficient facts to support the claim.

**A. Plaintiff's *Monell* claim relates back to the original pleading.**

As stated above, the County's first argument is Plaintiff's *Monell* claim is time-barred. (ECF No. 85 at 4.) The County asserts the applicable statute of limitations is two years, and accrual begins when a plaintiff knows or has reason to know of the injury. (*Id.*) The County argues Plaintiff's original complaint, filed in August 2023, shows Plaintiff knew of the ignored medical request forms then, and thus, Plaintiff's *Monell* claim expired in August 2025. (*Id.*)

Plaintiff responds his *Monell* claim relates back to the original complaint and is therefore not time-barred. In the Ninth Circuit, if an otherwise time-barred § 1983 claim relates back to the original pleading under either the Federal Rules or the state law where

the case sits, it is treated as timely. *Butler v. Nat'l Cmty. Renaissance of Cal.*, 766 F.3d 1191, 1200 (9th Cir. 2014).

To relate back under California law, the original and amended pleadings must (1) rest on the same general set of facts; (2) involve the same injury; and (3) refer to the same instrumentality. *Estrada v. Royalty Carpet Mills, Inc.*, 292 Cal. Rptr. 3d 1, 24 (2022). "An amended complaint relates back to an earlier complaint if the amended complaint is based on the same general set of facts, even if the plaintiff alleges a different legal theory or new cause of action." *Newport Harbor Ventures, LLC v. Morris Cerullo World Evangelism*, 212 Cal. Rptr. 3d 216, 228 (2016). The essential question "is whether the defendant had adequate notice of the claim based on the original pleading." *Pointe San Diego Residential Community, L.P. v. Procopio, Cory, Hargreaves & Savitch, LLP*, 125 Cal. Rptr. 3d 540, 550 (2011). This "is satisfied when recovery under an amended complaint is sought on the same basic set of facts as the original pleading." *Id.*

First, the *Monell* claim rests on the same general set of facts as the original pleading: Plaintiff's incarceration in July 2022 and the County's responses to Plaintiff's medical needs. Second, the *Monell* claim involves the same injury as the original pleading: the violation of Plaintiff's Fourteenth Amendment right to adequate medical care. And third, the *Monell* claim references the same instrumentality as the original pleading: the County's employees carrying out the County's policies and customs.

In *Burt v. Ramos*, No. 3:24-cv-00662-CAB-VET, 2025 U.S. Dist. LEXIS 224717 (S.D. Cal. Nov. 14, 2025), this Court addressed the same issue here, namely, whether a *Monell* claim related back to the original complaint. There, the plaintiff's original complaint alleged he suffered excessive force during an arrest. *Id.* at *2–3. Plaintiff then filed an amended complaint adding a *Monell* claim after the two-year statute of limitations expired. *Id.* at *5–6. The court denied the County's argument "that because the original complaint did not provide notice to the County of any defect in its policies or customs, or lapse in its training of deputies, the County did not have adequate notice of the claims against it," and instead the court found the claim related back. *Id.* at *7–8, 9. The court

found two facts particularly persuasive.  First, the original complaint named the County under a theory of *respondent superior* and included statements like "The County of San Diego is responsible for the acts of its employees within the course and scope of their employment." *Id.* at *8–9.  Second, both complaints pleaded "the same general set of facts," and the amended complaint did not add a new injury. *Id.* at *9.

In both relevant aspects, this case is analogous to *Burt*.  Here, in the original complaint, Plaintiff named the County under a theory of *respondent superior* and asserted "the County of San Diego itself is liable for the misconduct of its employees when performed within the scope of employment." (ECF No. 1 ¶ 72.)  Also, both the original complaint and the 4AC rely on the same general set of facts, and the amended complaint does not add a new injury.

The Court finds Plaintiff's illnesses, the injuries that flowed from them, and the County's responsibility over Plaintiff while he was in its custody make up the same basic set of facts of both the original claims and the added *Monell* claim.  As such, the County had fair notice of the amended *Monell* claim and suffers no prejudice in having to defend against it.  Thus, Plaintiff's *Monell* claim relates back and is timely filed.

**B. Plaintiff successfully pleads a policy or custom *Monell* claim.**

Next, the County argues Plaintiff fails to sufficiently allege a *Monell* claim.  First, the County asserts Plaintiff fails to clearly articulate how a delay in treatment after submitting a medical request form constitutes a Fourteenth Amendment violation. (ECF No. 18 at 5.)  Next, the County argues the 4AC's confusion on the timing of the submitted grievances precludes the *Monell* claim. (*Id.*)  Lastly, the County argues the 4AC fails to show evidence of an unconstitutional policy or, alternatively, a pattern of behavior that would put the County on notice of an unconstitutional custom. (*Id.* at 6.)  The Court is unpersuaded by these arguments and finds Plaintiff sufficiently pleads a *Monell* claim based on the policy or custom theory of liability.

In *Monell*, the Supreme Court interpreted local governments as "persons" liable under 42 U.S.C. § 1983 when their official policies cause a constitutional tort. *Monell v.*

*Dep't of Soc. Servs.*, 436 U.S. 658, 691, 694 (1978).  A successful *Monell* claim must allege more than simply the employment of a tortfeasor, though. *Id.* at 691.  Instead, a plaintiff must show it is plausible that a government policy or custom caused their injury, not individual agents acting in opposition to policy and custom. *Long v. County of Los Angeles*, 442 F.3d 1178, 1185 (9th Cir. 2006).  A plaintiff successfully states a *Monell* claim by alleging "(1) [a plaintiff] had a constitutional right of which he was deprived; (2) the municipality had a policy; (3) the policy amounts to deliberate indifference to his constitutional right; and (4) 'the policy is the moving force behind the constitutional violation.'" *Gordon v. County of Orange*, 6 F.4th 961, 973 (9th Cir. 2021) (quoting *Dougherty v. City of Covina*, 654 F.3d 892, 900 (9th Cir. 2011)).

### 1.  Constitutional Right

This Court has already found that Plaintiff successfully pleaded his Fourteenth Amendment right to adequate medical care was plausibly violated. *Brink*, 2024 U.S. Dist. LEXIS 118503, at *14.  The 4AC concerns the same occurrence, the County's alleged inadequate medical treatment of Plaintiff's Covid-19, GBS, disability, and injuries that followed.  Therefore, because this Court's opinion has not changed, Plaintiff successfully pleads he was plausibly deprived of a constitutional right.

### 2.  Policy

In the Ninth Circuit, a policy is "a deliberate choice to follow a course of action . . . made from among various alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in question." *Long*, 442 F.3d at 1185.  A plaintiff need not show the government has an official policy to satisfy this element; it is satisfactory to show the government has a practice "so permanent and well settled as to constitute a 'custom or usage' with the force of law." *Gordon*, 6 F.4th at 974. "Liability for improper custom may not be predicated on isolated or sporadic incidents; it must be founded upon practices of sufficient duration, frequency and consistency that the conduct has become a traditional method of carrying out policy." *Id.* (quoting *Trevino v. Gates*, 99 F.3d 911, 918 (9th Cir. 1996)).

23cv1756 DMS (SBC)

The Ninth Circuit has established two relevant policy types: those of action and those of inaction. *Long*, 442 F.3d at 1185; *see also Gibson v. County of Washoe*, 290 F.3d 1175, 1194 (9th Cir. 2002); *Est. of Silva v. County of Imperial*, No. 3:25-cv-1295-JES-MMP, 2026 U.S. Dist. LEXIS 117177, at \*21 (S.D. Cal. May 26, 2026). Policies of action involve municipalities instructing agents through official policy or well-settled customs to perform, or omit to perform, actions. *Hyun Ju Park v. City & County of Honolulu*, 952 F.3d 1136, 1141 (9th Cir. 2020). Policies of inaction, on the other hand, involve municipalities "[failing] to implement procedural safeguards to prevent constitutional violations . . . in the sense that the [municipality] could have prevented the violation with an appropriate policy." *Tsao v. Desert Palace, Inc.*, 698 F.3d 1128, 1143 (9th Cir. 2012) (internal citations omitted).

Here, Plaintiff alleges a mix of official and unofficial policies and customs of both action and inaction, all concerning the prison's grievance and medical request system. (4AC ¶¶ 118–19.) In terms of official policy, Plaintiff alleges there are no safeguards to ensure that grievance or medical request forms are available to inmates and, once submitted, no mechanism to track their processing or ensure they were even submitted. (*Id.* ¶ 120.) Additionally, Plaintiff asserts the County lacks a disability specific system for inmate disability requests, requiring inmates to enter them through the general grievance system. (*Id.* ¶ 124.) These allegations establish the plausible existence of an official policy of inaction adopted by the County.

Next, Plaintiff alleges seven incidents of the County mishandling inmate grievances since 2017 to support his unofficial custom claim. These include:

1) A deputy warning an inmate not to submit a grievance form by saying "whoever you want to write up, don't" (*Id.* ¶ 128.);

2) A deputy telling an inmate submitting a grievance form he needed to "let the Sergeant sign this" before accepting it, contrary to policy (*Id.* ¶ 129.);

3) An inmate witnessing a guard throw his submitted grievance form into a trash can (*Id.* ¶ 130.);

23cv1756 DMS (SBC)

4) An inmate testifying there were no grievance forms available in his housing unit and that deputies denied his requests for forms (*Id.* ¶ 131.);

5) The County admitting they failed to process three inmate grievance forms after the inmate made photocopies and offered them as proof (*Id.* ¶ 133.);

6) The Court's finding in *Goolsby v. County of San Diego*, No. 3:17-cv-00564-WQH-NLS, 2020 U.S. Dist. LEXIS 60192, at *18 (S.D. Cal. April 6, 2020) that "there [was] no evidence in the record that Defendant responded to Plaintiff's [grievance] in a timely manner" (*Id.* ¶ 134.);

7) An inmate testifying he submitted six grievance forms and received no response (*Id.*);

8) The general allegation that jail staff regularly claim submitted grievance forms are not actually grievances, resulting in the grievances failing to be logged in JIMS or responded to. (*Id.* ¶ 132.)

Plaintiff argues these incidents are "proof and notice that the County maintains an inadequate grievance and medical request policy and training thereon." (*Id.* ¶ 135.) The County argues that "no examples contained in paragraphs 128–131 are relevant to the alleged facts in this case and cannot serve as the basis for the *Monell* claim." (ECF No. 85 at 6.) The Court disagrees with the County and finds that, taken as true, the allegations establish the plausibility of a well-settled County custom involving the handling or mishandling of grievance forms.

There is no bright-line rule to determine how many violative instances a plaintiff needs to allege to transform sporadic behavior into customary behavior. Courts have found that "generally, "[p]roof of a single incident of unconstitutional activity is not sufficient." *Nyarecha v. County of Los Angeles*, No. 23-55773, 2024 U.S. App. LEXIS 26252, at *3 (9th Cir. 2024) (quoting *Okla. City v. Tuttle*, 471 U.S. 808, 823–24 (1985)); *see also Meehan v. County of Los Angeles*, 856 F.2d 102, 107 (9th Cir. 1988). When a plaintiff alleges similar violations by the defendant against others, courts have been willing to find the allegation of a custom plausible. *See Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011)

(finding a plaintiff sufficiently pleaded a *Monell* claim because the plaintiff "specifically allege[d] numerous incidents" of police misconduct like the plaintiff faced); *Mitchell v. County of Contra Costa*, 600 F. Supp. 3d 1018, 1030 (N.D. Cal. April 26, 2022) (finding fifteen other related lawsuits against defendant amounted to a custom).  Here, Plaintiff alleges seven distinct but similar incidents evidencing the denial, discouragement, or dismissal of inmate grievance forms absent any process or safeguards.  The Court finds these alleged incidents are relevant to Plaintiff's *Monell* claim in that, when looked at in the light most favorable to Plaintiff, they show the plausibility that ignoring or otherwise failing to take seriously inmate grievance and medical request forms was an unofficial policy of the County.  The 4AC goes further than making conclusory statements or bald allegations by citing similar violations that resemble a pattern.  Thus, Plaintiff has sufficiently alleged the plausibility of both County policies and customs.

### 3. Deliberate Indifference

To successfully plead a *Monell* claim, the plaintiff must show the policy in question "amounts to deliberate indifference to the plaintiff's constitutional right." *BGH Holdings, LLC v. D.L. Evans Bank*, No. 24-2540, 2025 U.S. App. LEXIS 12318, at *2 (9th Cir. 2025) (internal quotations omitted).  "Deliberate indifference is 'a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action.'" *Patel v. Kent Sch. Dist.*, 648 F.3d 965, 974 (9th Cir. 2011) (quoting *Bryan County v. Brown*, 520 U.S. 397, 410 (1997)).  "To show deliberate indifference, [the plaintiff] must demonstrate 'that [the entity] was on actual or constructive notice that its omission would likely result in a constitutional violation.'" *BGH Holdings*, 2025 U.S. App. LEXIS 12318, at *3 (internal quotations omitted).  Plaintiffs can do so in two ways: either by "showing 'the policy [is] so facially deficient that any reasonable policy maker would recognize the need to take action,' or by showing 'a pattern of prior, similar violations of federally protected rights, of which the relevant policy makers had actual or constructive notice.'" *Est. of Silva*, 2026 U.S. Dist. LEXIS 117177, at *24. (quoting *Hyun Ju Park*, 952 F.3d at 1142).  Due to the complexity involved in determining the subjective intent of a

23cv1756 DMS (SBC)

disembodied entity like a municipality, the Ninth Circuit applies an objective standard to deliberate indifference. *Castro v. County of Los Angeles*, 833 F.3d 1060, 1076 (9th Cir. 2016).

Here, Plaintiff pleads facts to show it was plausible the County was on constructive notice that constitutional violations would likely result from their policies and customs. Specifically, Plaintiff alleges a pattern of prior, similar violations that make it plausible that relevant policy makers were on constructive notice that constitutional violations were likely to occur. As discussed above, Plaintiff cites seven publicly available instances where the County mishandled inmate grievances that, when looked at in the best light for Plaintiff, could amount to constitutional violations. The alleged lack of safeguards, tracking, and accountability also supports the allegation that the County's policies and customs amounted to deliberate indifference to inmates' medical needs. These factual allegations push the County's deliberate indifference from conceivable to plausible. Put simply, the alleged flaws in the grievance and medical request policies in combination with similar violations in other cases make it plausible that County policy makers knew that future constitutional injuries were likely. Thus, the 4AC successfully pleads the County was plausibly deliberately indifferent.

4. Causation

A policy or custom is the moving force behind a constitutional violation when it is "(1) the cause in fact and (2) the proximate cause of the constitutional deprivation." *Silva v. San Pablo Police Dep't*, 805 Fed. App'x 482, 485 (9th Cir. 2020) (quoting *Trevino*, 99 F.3d at 918). Here, Plaintiff successfully alleges the plausibility that the County's grievance and medical request system's policies and customs are both the cause in fact and the proximate cause of the violation of his Fourteenth Amendment right to adequate medical care.

To show causation in fact, the "plaintiff must plausibly establish that the injury would have been avoided had proper policies been implemented." *Hyun Ju Park*, 952 F.3d at 1147 (internal citations omitted). Plaintiff alleges the policies and customs are the cause

in fact because Plaintiff's constitutional violations would not have occurred had the County sufficiently processed and responded to his grievance and medical request forms.

Plaintiff also alleges he submitted two medical request forms seeking redress for his worsening Covid-19 symptoms following his visit with the nurse. According to the 4AC, they were ignored, and Plaintiff was taken to his court hearing without receiving any treatment or diagnosis. Then, after allegedly being denied medical treatment again on his way back from his hearing, Plaintiff fell. Had prison staff responded to the two medical request forms, Plaintiff alleges he would have been properly diagnosed and treated for his budding Covid-19 and GBS, or he would have gone to medical housing instead of the hearing. Either way, his first fall would not have happened.

Next, if the staff had not ignored Plaintiff's grievance forms requesting an ADA-compliant cell as Plaintiff claims, he would not have fallen while using the bathroom in a non-ADA-compliant cell. Thus, it is plausible if the prison had adequate policies and customs for handling grievance and medical request forms, Plaintiff would have received adequate medical treatment, and his constitutional injuries would have been avoided. Therefore, Plaintiff successfully pleads the grievance and medical request forms policies and customs were plausibly the cause in fact of Plaintiff's constitutional violations.

Second, it is plausible the County's grievance and medical request form system's policies and customs were the proximate cause of the constitutional violations. To show proximate causation, a "plaintiff must plausibly establish that any intervening actions were within the scope of the original risk and therefore foreseeable." *Id.* at 1147–48 (internal citations omitted). The most relevant intervening event is Plaintiff's GBS. Plaintiff alleges, with evidence, that his Covid-19 caused his GBS. (4AC ¶ 9.) At this stage, that allegation is more than speculative, and the Court takes Plaintiff's statement as true. Furthermore, the County did not need to foresee Plaintiff's GBS specifically to satisfy proximate causation. An unresponsive grievance and medical request system's scope of risk encompasses the possibility that a single untreated illness might snowball into more, potentially rarer, illnesses. As such, Plaintiff's GBS is within the scope of the risk of an

23cv1756 DMS (SBC)

inadequate grievance and medical request system and is therefore foreseeable.  Thus, there are no intervening actions that were not within the scope of the County's risk, and Plaintiff successfully pleads the grievance and medical request systems were plausibly the proximate cause of his constitutional violation.

In conclusion, Plaintiff successfully pleads his *Monell* claim under the policy and custom theory of liability by showing the plausibility of all four elements.

## C. Plaintiff successfully pleads a failure to train *Monell* claim.

Secondarily to the *Monell* claim under the policy or custom theory, Plaintiff alleges "[t]he County also fails to adequately train staff and contractors how to receive, track, maintain, and respond to grievances." (4AC ¶ 125.)  Once finding a successful pleading for a *Monell* claim under one theory, some courts in the Ninth Circuit have declined to address a plaintiff's other theories because they are "different arguments in support of a single claim." *Quinto-Collins v. City of Antioch*, No. 21-cv-06094-VC, 2022 U.S. Dist. LEXIS 471, at *5 (N.D. Cal. Jan. 3, 2022).[1]  The Court elects to address Plaintiff's failure to train *Monell* claim to give the parties more clarity going forward in litigation.

The Supreme Court has extended liability under *Monell* to instances where a municipality's failure to train its agents amounts to deliberate indifference to the rights of the people whom those agents contact. *City of Canton v. Harris*, 489 U.S. 378, 387 (1989). "To allege a failure to train, a plaintiff must include sufficient facts to support a reasonable inference (1) of a constitutional violation; (2) of a municipal training policy that amounts to a deliberate indifference to constitutional rights; and (3) that the constitutional injury would not have resulted if the municipality properly trained their employees." *Benavidez v. County of San Diego*, 993 F.3d 1134, 1153–54 (9th Cir. 2021).  "A pattern of similar

---

[1] *See also Thomas v. Stanislaus County*, No. 2:25-cv-02113 WBS CSK, 2026 U.S. Dist. LEXIS 1696, at *6 (E.D. Cal. Jan. 6, 2026) ("Because plaintiff adequately alleges a Monell claim under a custom or policy theory, it is 'not necessary evaluate [his] failure-to-train' and ratification theories' at this stage.'"); *Faison v. Alameda County*, No. 24-cv-06059-JSC, 2025 U.S. Dist. LEXIS 139191, at *4 (N.D. Cal. July 21, 2025) ("Because Plaintiff sufficiently pleads a failure to train liability theory, it is unnecessary to evaluate the plausibility of other Monell theories he may pose.").

constitutional violations by untrained employees is 'ordinarily necessary' to demonstrate deliberate indifference for purposes of failure to train." *Connick v. Thompson*, 563 U.S. 51, 62 (2011) (quoting *Bd. of the Cnty. Comm'rs v. Brown*, 520 U.S. 397, 409 (1997)).

First, the constitutional violation is the same as above. Thus, the 4AC satisfies the first element.

Second, Plaintiff sufficiently alleges facts to establish the plausibility of a training policy that manifests in deliberate indifference to inmates' constitutional rights. The Plaintiff does so by alleging the seven analogous instances of prison staff denying or otherwise ignoring submitted inmate grievance forms without process or safeguards. In this case and the alleged similar incidents, the agents themselves are allegedly responsible for the grievance and medical request mismanagement as opposed to a faulty, depersonalized system. Thus, these instances serve as grounds for finding that it is plausible the County knew they needed to train employees how to handle the grievance system but failed to.

Third, it is plausible Plaintiff would have received adequate medical care had the County trained its employees on how to handle grievances. For example, had prison staff responded to Plaintiff's grievances requesting a transfer to an ADA-compliant cell after his GBS put him in a wheelchair, he would not have fallen the second time. Thus, Plaintiff's inadequate medical treatment is a constitutional injury that plausibly would not have happened had the County properly trained its employees.

Therefore, Plaintiff adequately pleads his *Monell* claim under both the failure to train theory and the policy and custom theory.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

23cv1756 DMS (SBC)

## IV.    CONCLUSION AND ORDER

For the reasons set out above, the Court **DENIES** the County's Motion to Dismiss Count Six from the FAC.

**IT IS SO ORDERED.**

Dated:  July 9, 2026

Hon. Dana M. Sabraw
United States District Judge

16

23cv1756 DMS (SBC)